SIMMONS ET AL., APPELLEES, *v.*
NATIONWIDE MUTUAL INSURANCE CO., APPELLANT.

[Cite as Simmons v. Nationwide Mutual Ins. Co. (1979),
65 Ohio App. 2d 28.]

(No. 38397—Decided June 14, 1979.)

*Mr. Donald M. Levy,* for appellees.
*Mr. Bernard L. Kahn,* for appellant.

DAY, J.  Plaintiffs-appellees, Doris Simmons *et al.* (plaintiffs), brought suit against defendant-appellant, Nationwide Mutual Insurance Company (defendant), seeking to compel Nationwide to extend uninsured motorist coverage to plaintiffs for an automobile accident with an uninsured driver. Willie S. Simmons, Jr., is the named insured under the Nationwide policy whose coverage is the subject of this lawsuit. The trial court granted plaintiffs' motion for summary judgment on the issues of coverage and damages.

Nationwide filed a timely appeal and assigned one error. The assignment is reproduced in the margin.[1]

For reasons assessed below, the judgment is reversed.

---

[1] "The trial court erred in rendering summary judgment in favor of Doris Simmons, Katie Simmons, Willie Simmons, Wandra Simmons and Willie S. Simmons against the defendant-appellant Nationwide Mutual Insurance Company on the issue of uninsured motorist coverage, and in rendering final money judgment in favor of Doris Simmons, Katie Simmons, Willie Simmons, and Wandra Simmons against the defendant-appellant Nationwide Mutual Insurance Company, and in not rendering summary judgment for the defendant-appellant."

## I.

Five plaintiffs are involved in this appeal: Doris Simmons, Katie Simmons, Willie Simmons, Wandra Simmons, and Willie S. Simmons, Jr. Doris Simmons owned and was driving the automobile involved in the accident. Katie, Willie, and Wandra were passengers. All were relatives of Willie S. Simmons, Jr., and resided in his household.

## II.

On August 28, 1973, Doris Simmons was involved in an accident with an uninsured motorist. She was driving a 1965 Ford automobile, owned by her and not designated as "insured" under the Nationwide policy held by Willie S. Simmons, Jr. She had acquired the vehicle five days before the accident. The insurance company denied coverage to all plaintiffs on the basis of the "other owned vehicle" exclusion clause.

## III.

The pertinent portions of the insurance policy read:   .
"ENDORSEMENT
"FAMILY PROTECTION COVERAGE (UNINSURED MOTORISTS)
"(Automobile Bodily Injury Liability)
"* * *

"INSURING AGREEMENTS
"I. *Damages for Bodily Injury Caused by Uninsured Motor Vehicles*
"The Company will pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle* * *.
"* * *

"II. *Definitions*
"(a) 'Insured' means:
"(1) the Named Insured as stated in the policy herein also referred to as the 'principal Named Insured' and any person

designated as Named Insured in the schedule and, while residents of the same household, the spouse of any such Named Insured and relatives of either;

"(2) any other person while occupying an insured automobile***.
"***

"(b) 'insured automobile' means:

"(1) an automobile described in the schedule as an insured automobile***.
"***

"(3) a land motor vehicle while being operated by a Named Insured or by his spouse or a relative of either if a resident of the same household; but the term 'insured automobile' shall not include***.
"***

"(iv) under subparagraph (3) above, a land motor vehicle owned by the principal Named Insured or by any Named Insured designated in the schedule or by any resident of the same household as such Insured***.
"***

"EXCLUSIONS

"This endorsement does not apply:***.
"***

"(b) to bodily injury to an Insured while occupying a land motor vehicle (other than an insured land motor vehicle) owned by a Named Insured or any relative resident in the same household, or through being struck by such a land motor vehicle.
"***

"Description of Insured Automobiles:

"Any automobile designated in the Declarations of the policy for which a specific premium charge indicates that Family Protection Coverage (Uninsured Motorists) insurance is afforded and if protection is so afforded a four wheel land motor vehicle ownership of which is acquired during the policy period by the principal Named Insured which has not, except as a replacement, been the subject of such ownership for more than 30 days."

A principal problem in this case is the adequate parsing of the convoluted contract terms. No simple isolation of terms or

phrases will assure a clear presentation of meaning. Nor is there any assurance that any other effort to clarify will succeed. However, there is no alternative to the effort.

Under II(a)(1) of the policy, the "Named Insured" (Willie S. Simmons, Jr.) and his relatives living with him in the same household have uninsured motorists coverage. Absent further reservation,[2] those persons falling within this II(a)(1) definition of "Insured" are presumably covered even if, as pedestrians, they are hit by an uninsured motorist. Under II(a)(2) any *other* person *occupying* an "insured automobile" also has uninsured motorist coverage.

The only automobile *in this case* which falls within the definition of an "insured automobile" in II(b)(1) is a 1967 Plymouth owned by Willie S. Simmons, Jr. However, an "insured automobile" under II(b)(3) also includes any "land motor vehicle while being operated by a named insured or by his spouse or a relative of either if a resident of the same household," provided the vehicle is *not owned* by any of the listed persons, II(b)(3)(iv). There is a 30-day grace period extending coverage to a vehicle newly acquired by the "Named Insured" (see Description of Insured Automobiles).

Finally, there is an exclusion[3] for an "Insured" injured "while occupying a land motor vehicle" not defined as "insured" under the terms of the policy.

### IV.

The resolution of the controversy in this cause requires a determination of the perimeters of the imperatives in the uninsured motorist statute, R. C. 3937.18. Specifically, the issue concerns the effect of the statute on the validity of the "other owned vehicle" exclusion clause of Nationwide's policy. The parties agree that if the clause is valid under the statute, plaintiffs are not entitled to coverage. Conversely, if the exclusion clause is void, plaintiffs must be afforded coverage.

On the date of the accident in question, R. C. 3937.18[4] read, in relevant part:

---

[2] *E.g.,* an operative exclusion.

[3] *I.e.,* the "other owned vehicle" exclusion.

[4] Since amended, see fn. 6, *infra.*

*"Mandatory offering of uninsured motorist coverage.*

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 4509.20 of the Revised Code, under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

Subsection (A) is composed of a single sentence of 188 words. Such giant sentences virtually insure obscurity. In this instance, that obscurity is compounded by parenthetical references and legal jargon. The statute is all but incomprehensible.

Combining optimism and editing one may conclude that the one sure legislative intent translates to this:

"Anyone buying insurance against bodily injury sustained while operating a motor vehicle garaged in this state must be given the option of purchasing uninsured motorist coverage."

If the translation is reasonably accurate, nothing remains to be done but to determine whether the statute prohibits an insurer from contracting with an insured for exclusions from uninsured coverage in order to limit such coverage to one vehicle.

Although this precise issue is a matter of first impression in Ohio, a number of cases dealing with it have been decided by the courts of other jurisdictions. Substantially comparable statutes and other owned vehicle exclusion clauses were involved in those decisions. Variations in statutory and contrac-

tual language are minor and may not warrant distinguishing between results. Nor would an extensive review of these cases prove useful in the present context. It is sufficient to note the probability that a majority of jurisdictions have held the "other owned vehicle" exclusion invalid in light of uninsured motorist statutes more or less similar to R. C. 3937.18. Various lines of reasoning are employed; see *Lowery* v. *State Farm Mutual Automobile Insurance Co.* (Miss. 1973), 285 So. 2d 767, and the cases upon which that decision relies. However, much of the rationale is simply conclusory and based upon broad, amorphous concepts of policy purportedly embodied in the statutes. In any event the decisions from other states have no reach beyond persuasion.

One of the arguments advanced against the validity of "other owned vehicle" exclusions is that they restrict uninsured coverage more narrowly than that extended to the insureds under the liability section of the policy. The statute, it is said, mandates "complementary" coverage, *i.e.,* equality in the scope of coverage afforded those insured under the liability endorsement and those insured under the uninsured motorist endorsement.

Several problems arise with respect to such an interpretation of the statute.

First, there is no logically defensible necessity for an equation between coverage of the insured's obligation *to pay* (liability coverage) and coverage of *the right to be paid* (uninsured motorist coverage). Indeed, had the legislature intended this exact balance, it could have said so quite explicitly. But it did not. Instead, the legislative policy preference for uninsured motorist coverage was expressed in the mandate that insurers must provide insureds such coverage coupled with the option to reject it. There the requirement ended.

Second, a public policy requiring that an option to purchase uninsured coverage be offered an insurance purchaser does not affect the breadth of the coverage to be bought. If the legislative program was intended to preclude contracts between insurers and insureds defining the scope of the coverage, *i.e.,* defining scope by the use of exclusions, the lawmakers would have been explicit. For the total nullification of exclusions is such an extreme invasion of the right of private parties to contract that it must be assumed that the

legislature would not leave its intent to mere inference. This is particularly so because in the long run the results of such an inference would be to make uninsured coverage more costly and thus inhibit its spread.[5]

Third, it is obvious that the statute is aimed at relieving individuals of the burdens which may be imposed upon them by injury negligently inflicted by uninsured motorists. The uninsured motorist is viewed by the policy of the statute as a substantial threat to the public welfare. However, because the legislative concern for the problem is expressed by a compulsory coverage joined to the purchaser's right to reject, the insurer *can* write an automobile policy without uninsured motorist coverage. The offer is mandatory. The acceptance is not. It is obvious that the legislative program is to encourage insureds to opt for the uninsured coverage. But it is also clear that the applicable statute does not mandate the coverage.[6]

---

[5] Of course, a limitation would be unlawful if it attempted to nullify the statutory purpose. This is not the case here.

[6] A subsequent amendment to R. C. 3937.18 supports this conclusion. A comparison of the pertinent language and its changes will demonstrate the point. Effective November 26, 1975, the wording of the section was changed. Before that date the section provided that no insurance policy insuring against liability for personal injury or death "arising out of the ownership, maintenance, or use of a motor vehicle" should be issued or delivered "unless coverage is provided * * * in limits for bodily injury or death set forth in section 4509.20 of the Revised Code * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *" because of resulting injuries. The limits on coverage defined in R. C. 4509.20 pertain entirely to money and *not* to the scope of coverage.

Effective November 26, 1975, R. C. 3937.18 was amended (136 Ohio Laws 57) to provide that no automobile policy insuring against liability for personal injury or death from the operation of a motor vehicle should be issued or delivered *"unless an equivalent amount of coverage"* for personal injury or death "is provided" for the protection of persons "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles" because of resulting injuries. At a later point in the section money limits are set by reference to R. C. 4509.20.

The change from "unless coverage is provided * * * in limits * * * set forth in section 4509.20 of the Revised Code" to "unless an equivalent amount of coverage * * * is provided" without reference to R. C. 4509.20 indicates the intent of the legislature to deal with "scope" of coverage rather than dollar limits. The view is reinforced by a later advertence to "money" coverage through reference to R. C. 4509.20.

The most likely interpretation of the significance of the alteration allows only the conclusion that the legislature incorporated the plaintiffs' contention into the statutory regulation after the effective date of the insurance policy under which they claim. The

If, as the plaintiffs contend, the statute requires uninsured coverage without exclusions, then premium costs will soar with the expanded financial exposure of the insurers.

The present case illustrates the point admirably. Without the exclusion the extent of coverage under the policy in issue is vastly expanded. Premium cost must swell and the swelling will discourage purchase of uninsured motorists coverage. This consequence contradicts and obstructs the apparent legislative purpose in the statute controlling this case.

One need not look further than those cases which have dealt with this issue for additional evidence to show these conclusions are more than mere conjecture. Those insureds owning or riding in uninsured vehicles have benefited despite their *own* failure to acquire insurance of any kind on these vehicles. An insurer's motivation to sell liability insurance of any kind is obviously chilled in such circumstances.

The "other owned vehicle" exclusion, under the governing version of R. C. 3937.18 is valid.[7] The plaintiffs are not entitled to the policy benefits. The incident did not involve an insured vehicle.

The judgment of the trial court is reversed and judgment entered for defendant.

*Judgment reversed.*

KRENZLER, P. J., KRUPANSKY, J., concur.

---

change also followed the date of the incident which the plaintiffs contend activated the rights they assert. Thus, the benefits of the change are not available to them.

[7] This holding does not conflict with the holding in *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58. For in that case, the Supreme Court specifically declined to enter the controversy confronted by this court in this case. *Id.*, at pages 60-61, fn. 3. Moreover, *Volkmann* is readily distinguishable on its facts. There the owner had uninsured motorist coverage on all of his vehicles. A collision injured the daughters of the owner riding in one of them. The insurer, using the exclusionary clause, attempted to confine recovery to the coverage under the policy on the "insured automobile," *i.e.*, the car in which the injured claimants were riding. The injured persons were "insureds" under the definition in all the policies. The decision allowed recovery under all of them.