DAIRYLAND INSURANCE COMPANY, APPELLEE, *v.* FINCH ET AL., APPELLANTS.

[Cite as Dairyland Ins. Co. *v.* Finch (1987), 32 Ohio St. 3d 360.]

(No. 86-1505—Decided September 16, 1987.)

*Isaac, Brant, Ledman & Becker, Charles E. Brant* and *J. Stephen Teetor,* for appellee.

*Piacentino & Piacentino Co., L.P.A.,* and *C. Michael Piacentino,* for appellants.

WRIGHT, J. Appellant Finch challenges the holdings of the courts below, arguing: (1) that the family member exclusionary clause under the policy of insurance in question contravenes specific provisions of the Financial Responsibility Act and is therefore void *ab initio;* (2) that the subject policy did not contain an intrafamilial exclusion within the uninsured motorist provision of the policy and, in the alternative, if such an exclusion did exist, it is void as against public policy; and (3) that intrafamilial exclusions serve no valid public policy purpose where a claim is filed by a surviving spouse against the fiduciary of the insured's estate. For the reasons to follow, we reject appellant's contentions and affirm the judgment of the court of appeals.

I

At the time of the accident, Edward Finch was the named insured under Dairyland's policy, which provided, in pertinent part[1]:

"The liability insurance of this policy doesn't apply to bodily injuries or property damage suffered by the person named on the declarations page, or to *anyone who is a member of the family of the person named on the declarations page and who lives with that person.''*[2] (Emphasis added.)

It is appellant's position that the foregoing policy provision is violative of R.C. 4509.51, which is contained within the Financial Responsibility Act. According to appellant, since this section provides that "[e]very owner's [motor-vehicle] policy of liability insurance * * * [s]hall insure the person named therein and *any* other person, as insured * * *" (emphasis added), Dairyland's liability exclusions for the named insured and household family members contradict the standards imposed under R.C. Chapter 4509, and must therefore be considered void and unenforceable. We conclude that appellant's reliance on R.C. 4509.51 is misplaced.

Although R.C. 4509.51 sets forth requirements to be included within "[e]very owner's policy of liability insurance," an "owner's policy" is defined by R.C. 4509.01(L) as a policy having been "* * * *certified* as provided in section 4509.46 or 4509.47 of the Revised Code as proof of financial responsibility, and issued, except as provided in section 4509.47 of the Revised Code, by an insurance carrier authorized to do business in this state, to or for the benefit of the person named therein as insured." (Emphasis added.)

Without question, *unless* the policy of insurance is *certified* in conjunction with R.C. 4509.46 or 4509.47, the provisions of R.C. 4509.51 do not apply. This is precisely the holding in *Moyer* v. *Aron* (1964), 175 Ohio St. 490, 26

---

[1] The parties stipulated at trial that Edward and Phyllis Finch were husband and wife and resided in the same household.

[2] This exclusion is repeated elsewhere in the policy as follows:

"The liability insurance provided by this policy doesn't apply to the person named on the declaration page. It doesn't apply to the husband or wife of that person if they are living in the same household."

O.O. 2d 130, 196 N.E. 2d 454, wherein the court reasoned that "[n]ot until the policy is 'certified' under Section 4509.46 [or 4509.47] * * * would it result in the modification of the policy to comply with the * * * [Financial Responsibility Act], which, through the application of Section 4509.51, *supra*, would then result in insurance coverage for all permissive users, even though the user does not fall under the definition of an '* * * insured' in the policy." *Id.* at 492, 26 O.O. 2d at 131, 196 N.E. 2d at 457. See, also, *Bob-Boyd Lincoln Mercury* v. *Hyatt* (1987), 32 Ohio St. 3d 300, 513 N.E. 2d 331; *Knapp* v. *State Farm Mut. Auto. Ins. Co.* (1982), 6 Ohio App. 3d 53, 6 OBR 217, 453 N.E. 2d 1110; *Trolio* v. *McLendon* (1965), 4 Ohio App. 2d 30, 33 O.O. 2d 52, 211 N.E. 2d 65.

The General Assembly has not seen fit to include in the Financial Responsibility Act a provision requiring all persons who drive in this state to procure automobile insurance. Instead, when proof of financial responsibility must be demonstrated, it may be with a bond, a certificate of deposit, a certificate of self-insurance or a certified policy of insurance as provided by R.C. 4509.46 and 4509.47. See R.C. 4509.45. In the instant case, appellant is clearly not insured under the language of the policy, and the record is devoid of any evidence that the decedent's policy of insurance was ever "certified" in conjunction with R.C. 4509.46 or 4509.47, so as to trigger the application of R.C. 4509.51. We therefore reiterate the position previously espoused in the second paragraph of the syllabus in *Moyer* v. *Aron, supra,* and followed in *Bob-Boyd Lincoln Mercury* v. *Hyatt, supra,* that a person is not an insured under the liability provisions of an automobile insurance policy unless defined by the terms of the policy as an insured; provided, however, that when the policy has been "certified" under the provisions of R.C. 4509.46 or 4509.47, the definition of who is an "insured" under the policy must conform with R.C. 4509.51 *et seq.*

## II

Appellant next contends that, assuming the validity of the liability exclusion, she is entitled to make a claim under the uninsured motorist provision of the policy. Continuing, appellant maintains that the policy in effect at the time of the accident did not contain a family member exclusion for purposes of uninsured motorist coverage or, in the event such an exclusion did exist, it is against public policy and is therefore void.

As is pertinent to this portion of appellant's appeal, the policy provided:

"EXCLUDED UNINSURED MOTOR VEHICLES

"A *motor vehicle* owned by *you* or furnished for *your* regular use isn't an uninsured *motor vehicle*."

The terms "you" and "your" are defined within the policy as "* * * the person named on the declarations page [*i.e.,* Edward Finch] and that person's husband or wife if a resident of the same household."

## A

We first consider appellant's argument that the above language does not constitute an exclusion prohibiting her, as the insured's spouse, from making an uninsured motorist claim against Dairyland. We are cognizant of the general rule that where a contract of insurance is ambiguous and therefore susceptible to more than one meaning, the policy language is to be liberally construed in favor of the claimant who seeks coverage. See, *e.g., Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95, 68 O.O. 2d 56, 313 N.E. 2d

844; *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 21 O.O. 2d 418, 187 N.E. 2d 20. Nevertheless, it is axiomatic that this rule can not be employed "to create ambiguity where there is none." *Tyler* v. *Ins. Co. of North America* (D. Ala. 1974), 381 F. Supp. 1356, 1359; *State Farm Mut. Auto. Ins. Co.* v. *Ward* (Mo. 1960), 340 S.W. 2d 635, 639.

Under the facts here, this court can not envision a more clear and unambiguous exclusion than that contained within the policy. At the outset, the exclusion was prefaced by large, bold-face type directing the insured's attention that some motor vehicles were being excluded from the uninsured motorist protections. The exclusion itself was clearly worded, and the fact that appellant, as the spouse of the insured residing in the same household, was also excluded from making an uninsured claim *against* the insured for his negligence was manifestly apparent from the exclusion and the definitional page of the policy.

Appellant, however, directs our attention to *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 23 O.O. 3d 495, 433 N.E. 2d 547, arguing that any uninsured motorist exclusion must be understood and accepted by the insured in order to be enforceable. This argument overlooks our subsequent holding in *Hedrick* v. *Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 44, 22 OBR 63, 64-65, 488 N.E. 2d 840, 842, wherein Justice Douglas, speaking for the court, stated:

"This court, however, does not find this language in *Ady* to be controlling. *Ady* was a plurality opinion. Only the syllabus received the requisite four votes. Thus, the only law emanating from *Ady* is contained in the syllabus, which provides as follows: 'Any contractual restriction on the

coverage mandated by R.C. 3937.18 must comply with the purpose of this statute.' The general language contained in the opinion or in the concurrence, however interpreted, is simply not the law of Ohio.

"Nor should such language be the law of Ohio. As Justice Holmes noted in his dissent in *Ady* at 604:

" 'In construing the mandates of the General Assembly insofar as the offering of uninsured motorist coverage in Ohio is concerned, we must not unduly restrict the free right of contract, and must allow for a certain amount of latitude for the exercise of discretion on the part of the policyholder as to the desirable extent or breadth of coverage for which he is willing, or able, to pay the premiums.'

"In addition, to require insurers or insurance sellers to explain in detail every sentence of an insurance contract as a prerequisite to its efficacy would be unduly burdensome. As the trial court so aptly noted, '* * *[t]here would doubtlessly be more confusion and disputes over the possibly individualized, disparate explanations given than if the drafters of these documents were required to write them in such a way that only the slightest interpretation would be necessary after the fact, as in a court of law.' "

We adhere to the position espoused in *Hedrick, supra,* and reject appellant's invitation to rewrite the policy so as to make an otherwise clear and concise exclusion ambiguous.

**B**

Having concluded that this family member exclusion for uninsured motorist coverage is not voidable on the basis of ambiguity, we next consider appellant's assertion that the exclusion is void as against public policy.

R.C. 3937.18 provides, in relevant part:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom[.]" (Emphasis added.)

Appellant contends that the aforementioned language, coupled with the holdings in *Sumwalt* v. *Allstate Ins. Co.* (1984), 12 Ohio St. 3d 294, 12 OBR 368, 466 N.E. 2d 544, and *Curran* v. *State Automobile Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 54 O.O. 2d 166, 266 N.E. 2d 566, serve to void family member exclusions on public policy grounds.[3] We find this contention unpersuasive.

The statute provides that "[u]ninsured motorist coverage * * * shall be

* * * [offered] for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom * * *." As was succinctly stated by the Supreme Court of Tennessee in *Holt* v. *State Farm Mut. Auto. Ins. Co.* (Tenn. 1972), 486 S.W. 2d 734, 737:

"The intent of the statute is to require automobile liability insurance companies to provide their insureds protection against drivers of vehicles without liability coverage.

"The car in which the * * * [plaintiff] was riding, at the time of the accident, was covered by a liability insurance policy. This coverage was not available to him because he was [as a family member] specifically excluded * * *, and not because of lack of liability protection." The court reached this conclusion when faced with an argument identical to appellant's and a statute similar to R.C. 3937.18. What appellant's argument overlooks is that the statute requires companies issuing automobile liability insurance policies to offer coverage to insureds who become injured and are legally entitled to recover damages from the owner or operator of the uninsured vehicle which caused the insured's damages. The vehicle in which appellant sustained her injuries carried liability insurance protection and, accordingly, we are unable to conclude that the subject exclusion contravenes the purpose or intent of the General Assembly when promulgating R.C. 3937.18, or

---

[3] Appellant's reliance upon *Curran* and *Sumwalt, supra,* are misplaced. The issue in *Curran* centered upon the validity of "other insurance" escape clauses, while *Sumwalt* held that the defense of parental immunity is personal in nature and may not be used by an insurer as a barrier to avoid payment of uninsured motorist benefits. More specifically, *Sumwalt* did not address a policy exclusion, nor did it address the public policy surrounding such exclusions.

the public policy associated with the statute. Accord *Harrison* v. *MFA Mut. Ins. Co.* (Mo. 1980), 607 S.W. 2d 137, 140. See, also, *Knapp* v. *State Farm Mut. Auto. Ins. Co.* (1982), 6 Ohio App. 3d 53, 55, 6 OBR 217, 220, 453 N.E. 2d 1110, 1113; *Simmons* v. *Nationwide Mut. Ins. Co.* (1979), 65 Ohio App. 2d 28, 19 O.O. 3d 18, 414 N.E. 2d 440.

In rejecting appellant's argument that the exclusion violates public policy, we note that our judgment is in accord with the vast majority of jurisdictions having addressed this issue. See, *e.g., United Farm Bur. Mut. Ins. Co.* v. *Hanley* (1977), 172 Ind. App. 329, 360 N.E. 2d 247; *Kay* v. *Kay* (1973), 30 Utah 2d 94, 513 P. 2d 1372; *Holt* v. *State Farm Mut. Auto. Ins. Co., supra; Lammers* v. *State Farm Mut. Auto. Ins. Co.* (1972), 48 Ala. App. 36, 261 So. 2d 757, certiorari denied (1972), 288 Ala. 745, 261 So. 2d 766, followed and applied in *Byrd* v. *Ala. Farm Bureau Mut. Cas. Ins. Co.* (Ala. 1979), 366 So. 2d 1108; *Allen* v. *West American Ins. Co.* (Ky. 1971), 467 S.W. 2d 123; *Harrison* v. *MFA Mut. Ins. Co., supra; Reid* v. *State Farm Fire & Cas. Co.* (Fla. 1977), 352 So. 2d 1172; *Allstate Ins. Co.* v. *Boles* (Ind. 1985), 481 N.E. 2d 1096; *Markahm* v. *State Farm Mut. Auto. Ins. Co.* (C.A. 10, 1972), 464 F. 2d 703; *Farmers Ins. Co.* v. *Miller* (1976), 87 Wash. 2d 70, 549 P. 2d 9. See, also, Annotation (1987), 52 A.L.R. 4th 18, and cases contained therein.

Moreover, to accept the argument advanced by appellant ignores several additional principles. See, *e.g., United Farm Bur. Mut. Ins. Co.* v. *Hanley, supra,* at 338-342, 360 N.E. 2d at 252-254. First, household exclusionary clauses in contracts of motor vehicle insurance have long been recognized in this state. *Moyer* v. *Aron, supra.* Recently, we expressed the view that, absent specific legislation to the con-trary, such exclusions are the proper subject for the marketplace, stating in *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94, 100-101, 18 OBR 129, 135, 480 N.E. 2d 388, 395:

"Companies fearing * * * [col-lusive] suits * * * [as a result of the abolishment of interspousal immunity] will not write such policies, or perhaps, as is much more common, will include a household member exclusion clause. See, *e.g., Schwalbe* v. *Jones* (1976), 16 Cal. 3d 514, 128 Cal. Rptr. 321, 546 P. 2d 1033, where at 521, fn. 9, it was judicially noticed that all automobile policies sold in California carry such an exclusion. * * *

"* * *

"Perhaps such coverage should be sold; perhaps it should not. That is not for this court to decide; it is for the marketplace, and for the buyers and sellers of insurance to decide. What this court should not do is put artificial and outmoded restrictions on the mar-ket in that type of coverage. Nonetheless, that is exactly what in-trafamilial immunity does. By abro-gating both parental and interspousal immunity, we are putting an end to the overweening judicial interference with the forces of our free market economy."

Second, there is no language in R.C. 3937.18 prohibiting insurance companies seeking to minimize possi-ble collusive suits from excluding coverage to family members. In fact, the statute specifically appears to af-ford insurance companies flexibility in this area by providing:

"(E) In the event of payment to any person under the coverages re-quired by this section *and subject to the terms and conditions of such coverages,* the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judg-ment resulting from the exercise of

any rights of recovery of such person against any person or organization legally responsible for the bodily injury * * *." (Emphasis added.)

The phrase "and subject to the terms and conditions of such cover-. ages" has been interpreted as a "legislative recognition of an insurer's right to define an uninsured automobile in a consistent manner." *United Farm Bur. Mut. Ins. Co.* v. *Hanley, supra,* at 340, 360 N.E. 2d at 253; *Allen* v. *West American Ins. Co., supra,* at 126-127. Given the limited amount of flexibility incorporated into R.C. 3937.18 by the General Assembly, we see no reason to contort and twist the statute to achieve an opposite result.

Third, insurance is a highly regulated industry within this state. See R.C. Title 39. In fact, R.C. 3937.18 constitutes a legislative determination that uninsured motorist coverage must be offered in conjunction with the purchase of motor vehicle liability coverage. Certainly, the General Assembly was aware of the use of exclusionary clauses when R.C. 3937.18 was enacted, yet no prohibition against their use is contained within the statute. After the abolishment of interspousal tort immunity in *Shearer* v. *Shearer, supra,* the legislature did not see fit to prohibit the use of these clauses in uninsured motorist coverage. We view the determination. of whether these clauses should continue to be available to insurers as legislative in nature and, accordingly, reject appellant's invitation to rewrite the statute to comport with her interests.

Finally, the recognition that insurance companies retain the right to erect reasonable exclusions to deter collusive suits is clearly demonstrated by the underlying action. After appellant was appointed administratrix of her husband's estate in December 1983, she filed the lawsuit against herself as administratrix seeking damages for the alleged injuries incurred in the automobile accident. The attorney representing appellant as the plaintiff in that proceeding also served as the attorney for the estate. Without question, the factual posture of the underlying proceeding demonstrates the necessity for insurance carriers to be able to invoke reasonable exclusions and, as such, we are not persuaded that the subject exclusion is either unreasonable or repugnant to the purpose or intent of the General Assembly when R.C. 3937.18 was enacted.

### III

In the same vein, we likewise reject appellant's contention that the need for such an exclusion has long since ceased to exist due to the death of her husband. The factual posture of this proceeding, which demonstrates that after Edward Finch died, appellant, in effect, sued herself, leads us to the conclusion that the insurer's interest in preventing collusion was not diminished.

Accordingly, we conclude that public policy does not prevent the issuance and enforcement of an automobile insurance policy containing a reasonable exclusionary clause, within the uninsured motorist provision, prohibiting intrafamilial recovery of damages against the issuer of the policy.

For all the foregoing reasons, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., LOCHER and HOLMES, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

SWEENEY, J., *dissenting.* In my view, the majority opinion has totally

misinterpreted the existing public policy of this state, as well as the uninsured motorist statute, R.C. 3937.18. Therefore, I must strongly dissent from the majority decision rendered herein.

Initially, I believe that in light of this court's abolition of intrafamilial immunities, the family exclusion set forth in the instant liability policy is violative of this jurisdiction's stated public policy. In *Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326, 15 OBR 452, 474 N.E. 2d 275, this court abolished parental immunity "without reservation." Subsequently, in *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94, 18 OBR 129, 480 N.E. 2d 388, we abrogated the archaic doctrine of interspousal immunity. Nevertheless, I believe that such immunities are effectively resurrected by today's opinion which endorses household and familial exclusions in automobile liability policies and uninsured motorist provisions. In my opinion, today's decision removes virtually all incentive for insurers to offer such family coverage, notwithstanding this court's stated public policy in *Kirchner* and *Shearer* that intrafamilial immunities have no place in modern Ohio jurisprudence.

The reasons which compelled the abolition of intrafamilial immunities are the same as those which should dissuade this court from upholding the family exclusion present in the instant automobile liability insurance policy. Regrettably, under the Dairyland policy approved herein, an innocent injured victim is precluded from any recovery under the policy simply because she is a member of the named insured's family. The approval of such an exclusion runs counter to the spirit of our precedents concerning familial immunities. Thus, the majority's approval of the exclusionary language of the subject policy precludes recovery by the very persons who are most fre-

quently exposed, and are the most susceptible, to the potential negligence of the named insured.

Even assuming, *arguendo*, that the family exclusion under the liability portion of the subject insurance policy is not violative of public policy, the appellant here is certainly the type of person who is at least legally entitled to recover damages under the uninsured motorist provision of the instant policy. Clearly, if the family exclusion under the liability portion of the policy is valid and enforceable, then *ipso facto* the insured becomes "uninsured" with regard to the appellant-spouse. Under R.C. 3937.18, the appellant should be permitted to make a claim under her deceased husband's uninsured motorist provision because the liability insurer has denied coverage under the liability portion of the policy. R.C. 3937.18(D) states clearly, "* * * a motor vehicle is uninsured if the liability insurer denies coverage * * *." Nevertheless, the majority permits the insurer to deny coverage under the uninsured motorist provision based on yet another exclusion in the policy that states, "[a] *motor vehicle* owned by *you* or furnished for *your* regular use isn't an uninsured *motor vehicle*."

Fundamentally, I feel that the majority's reliance upon and approval of the instant vehicle exclusion fly in the face of R.C. 3937.18 as well as prior Ohio case law. Once again, it must be emphasized that the uninsured motorist statute, R.C. 3937.18, was enacted by the General Assembly as remedial legislation for the protection of *persons,* not vehicles. See, *e.g., Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 51 O.O. 2d 229, 258 N.E. 2d 429; *Curran* v. *State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 54 O.O. 2d 166, 266 N.E. 2d 566; *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 62 O.O. 2d 406, 294 N.E. 2d 665; and, *Auto-Owners Mut.*

*Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 10 OBR 490, 462 N.E. 2d 396. Unfortunately, the majority conspicuously ignores such precedents, and summarily concludes that the vehicle exclusion here was proper in any event.

The majority supports its conclusion by asserting that, "[c]ertainly, the General Assembly was aware of the use of exclusionary clauses when R.C. 3937.18 was enacted, yet no prohibition against their use is contained within the statute." In my view, such a justification is totally unsatisfactory. Under the majority's rationale, the legislature would need to define each and every provision or exclusion that would run afoul of the intent of the uninsured motorist statute. Such a rationale, however, ignores this court's role in determining whether certain exclusions are consonant with the remedial purposes of the uninsured motorist statute. In the cause *sub judice,* the majority's enforcement of the vehicle exclusion in the Dairyland policy runs counter to the letter of R.C. 3937.18 as well as the abundant precedent, as set forth above, which declares that uninsured motorist coverage is designed to protect persons, and not vehicles.

Unfortunately, the majority's affirmance of this cause in favor of Dairyland merely sanctions inconspicuous and unfair exclusionary clauses in automobile insurance policies which do nothing more than undermine the remedial purposes of the uninsured motorist statute, contrary to the intent of the General Assembly.

Given the majority's enforcement of the instant exclusionary clauses, the appellant has no viable recourse, and must simply bear the loss she sustained in the accident. Unlike the majority, I do not believe that the exclusions in the subject policy are reasonable, and I cannot help but to conclude that the deceased policy holder received less than he bargained for, based on what is clearly required under state law.

Furthermore, I am unpersuaded that the fear of collusive actions is a legitimate basis for the insurer's exclusions that leave appellant without any genuine legal recourse. As this court stated in *Kirchner, supra,* at 329, 15 OBR at 454-455, 474 N.E. 2d at 278, with respect to fraudulent and collusive lawsuits:

"This all too familiar justification was also used to support the Ohio Guest Statute (R.C. 4515.02), and was unanimously rejected by this court in *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195 [72 O.O. 2d 112]. We see no compelling reason why such a justification should deny an innocent injured child his or her day in court merely because in some rare instances, fraud or collusion may take place. Unfortunately, fraud and collusion are always a possibility in any legal action that is pursued. In these types of situations, we depend on our judicial framework to ferret out the fictitious claims from the real ones. Our system is well equipped with sufficient safeguards which are designed to thwart the opportunity for fraud and collusion. The deterrent effect of a perjury charge, extensive and detailed pretrial discovery procedures, the opportunity for cross-examination, and the availability of summary judgment motions are but a few examples of the tools available to our judicial system in exposing fraudulent claims in any type of lawsuit. To deny an injured party a redressable claim for injuries sustained simply because fraud and collusion may occur in the exceptional case, is in our view, manifestly unjust."

Based on these reasons, I would reverse the decision of the court of appeals.