NUSSBAUM et al., Appellees,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellant.

[Cite as *Nussbaum v. Progressive Cas. Ins. Co.* (1988), 61 Ohio App.3d 1.]

Court of Appeals of Ohio,
Stark County.

No. CA–7560.

Decided Dec. 5, 1988.

2

[REDACTED]

*Amerman, Burt & Jones Co.* and *V. Lee Sinclair, Jr.*, for appellees.
*Eugene G. Gillis* and *Pamela A. Barker*, for appellant.

MILLIGAN, Judge.

Plaintiffs, husband and wife, sought a declaratory judgment in the Stark County Common Pleas Court. The husband, Richard L. Nussbaum, negligently drove his insured automobile causing injuries to his passenger, his wife, Julia E. Nussbaum. Julia, as against her husband, claimed their automobile insurance policy provided liability insurance and uninsured motorist coverage for her injuries.

On mutual motions for summary judgment, the court overruled defendant's motion and sustained plaintiffs' motion, decreeing:

"That there is coverage to the plaintiffs in the amount of $12,500 per person and $25,000 per occurrence."

Approximately four months after the notice of appeal, the trial court favored us with an explanatory memorandum captioned "findings of fact and conclusions of law," reciting:

"This court finds the policy of insurance in question contains contradictory language. The liability policy excludes coverage 'Part 1(f) ... to any person or organization with respect to bodily injury to any person who is an insured.'

The injured plaintiff, Julia Nussbaum, being an insured, is exluded [*sic*] under the policy for liability coverage. This policy further states that an ' "uninsured automobile" shall not include: (1) an insured automobile.' Therefore Julia Nussbaum is also excluded under the uninsured motorist [clause] because she was injured as a passenger in an insured automobile.

"O.R.C. 3937.18(B), now (D), states that a motor vehicle is uninsured if the liability insurer denies coverage. The uninsured motorists coverage of this policy specifically denies coverage to a vehicle with liability insurance. '[T]he public policy of the uninsured motorist statute is to protect persons injured in motor vehicle accidents from losses because of the tortfeasor's lack of liability insurance coverage.' *Ady v. West American Insurance Co.*, 69 O.St.2d 593, 595, 23 O.Op.3d 495, 497 [433 N.E.2d 547] (1982).

"This court further concludes that *Dairyland Insurance Co. v. Finch*, 32 O.S.3d 360 [513 N.E.2d 1324] (1987) is inapposite to the case sub judice. The *Dairyland* court merely held that 'reasonable exclusionary clauses . . .' are not prohibited. This Court, however, holds that it is unreasonable to have a policy of insurance written to grant coverage with the left hand and take it away with the right hand. Such language is not only ambiguous but unreasonable and the *Dairyland* court did not address this issue. The exclusion in the case at bar is not set out so as to cause an insured to understand he or she would not be covered.

"Therefore, this court finds the policy of insurance issued by the defendant to be contradictory as to coverage under the liability and the uninsured motorists coverage. Julia Nussbaum is therefore entitled to coverage."

The insurance company appeals, assigning two errors:

## "Assignment of Error I

"The court of common pleas erred when it decided that there was coverage in the amount of twelve thousand five hundred dollars ($12,500.00) per person and twenty-five thousand dollars ($25,000.00) per occurrence available to plaintiffs/appellees through the policy issued by defendant/appellant to plaintiff/appellee Richard Nussbaum since the terms of the policy exclude liability coverage to Richard Nussbaum when his negligence causes injury to his resident spouse, Julia Nussbaum.

## "Assignment of Error II

"The court of common pleas erred when it decided that there was coverage in the amount of twelve thousand five hundred dollars ($12,500.00) per person and twenty-five thousand dollars ($25,000.00) per occurrence available to

plaintiff/appellee Julia Nussbaum through the policy issued by defendant/appellant to plaintiff/appellee Richard Nussbaum inasmuch as uninsured motorists coverage is not available to Julia Nussbaum under the policy since her alleged injuries were caused by the negligence of the operator of an insured automobile."

Broadened by the abrogation of interspousal immunity, *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 18 OBR 129, 480 N.E.2d 388, and influenced legislatively, R.C. 3937.18, auto insurance coverage issues (including underinsured and uninsured motorist coverage) are increasingly vexatious. Analytically, coverage problems are resolved applying *contract* law, not tort law principles. *A fortiori*, review begins by examining the insurance contract, as affected by legislation.

Here the Progressive Casualty Combination Automobile Policy contains four separate parts: Part 1—Liability; Part II—Expenses for Medical Services; Part III—Physical Damage; Part IV—Uninsured Motorists Coverage. Appellees extrapolate coverage from the Policy's Part I—Liability, and Part IV—Uninsured Motorists Coverage.

## I. PART ONE—LIABILITY

Appellant's first assignment of error claims the policy's Part One—Liability does not underwrite *liability* of the negligent driver, the husband, to his injured passenger, the wife.

Part One provides:

"Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

"caused by accident and arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

"Insured" as to "the owned automobile" includes "the Named Insured." "Named Insured" is defined as "the individual named in Item I of the

Declarations and *also includes his spouse, if a resident of the same household.*" (Emphasis added.) (Barring exclusion, the policy would pay for any damages caused by Julia's negligence in operating this automobile).

Part One provides twelve specific exclusions of *liability* coverage. The sixth exclusion states that the policy does not apply "(f) to any person or organization with respect to bodily injury to any person who is an insured." Julia is an insured.

Appellees claim that because the policy at one point covers her as an insured but later excludes her from collecting under the liability coverage, the contract is ambiguous. They claim the ambiguity follows from the process one must go through "of intermeshing several sub-sections under Part I of the policy contained on the first two pages."

The trial court, after accepting this ambiguity argument, went a step further, finding that public policy, as well as R.C. 3937.18(D), requires persons in appellees' intrafamilial position to be protected. The trial court ruled the exclusionary clause unreasonable.

In 1985, the Ohio Supreme Court dealt in considerable detail with the interfacing of intrafamilial liability and its implications for liability insurance. The court recognized "unless there is liability insurance intrafamilial lawsuits do not occur." *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 99, 18 OBR 129, 480 N.E.2d 388, 394.

After discussing the development nationwide, the court addressed the law-and-economics, cost-benefit issue, observing:

" * * * The issue of collusion ought not to be a legal issue at all because the forces of the market will eliminate the problem. * * * Where there is a risk that fraud or collusion could lead to losses which far exceed the income generated by the policy, an insurance company has only limited choices. It can refuse to write such policies; it can take precautions to eliminate the potential for fraud; or it can charge a premium so prohibitively expensive that the coverage is unmarketable.

"Companies fearing such suits will not write such policies, or perhaps, as is much more common, will include a household member exclusion clause. * * *

" * * * *

"Perhaps such coverage should be sold; perhaps it should not. That is not for this court to decide; it is for the marketplace, and for the buyers and sellers of insurance to decide. What this court should not do is put artificial and outmoded restrictions on the market in that type of coverage. Nonetheless, that is exactly what intrafamilial immunity does. * * *" (Footnote

omitted.) *Shearer v. Shearer, supra,* at 100–101, 18 OBR at 134–135, 480 N.E.2d at 395.

It is well settled that Ohio recognizes exclusionary clauses in automobile insurance contracts. *Moyer v. Aron* (1964), 175 Ohio St. 490, 26 O.O.2d 130, 196 N.E.2d 454. R.C. 3937.18 does not prohibit family member exclusions in an automobile insurance contract. *Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, 365, 513 N.E.2d 1324, 1329.

"In fact, the statute specifically appears to afford insurance companies flexibility in this area [R.C. 3937.18] * * *." *Id.*

The policy's liability provision is not ambiguous merely because Julia is included as an insured and excluded from recovery. *Campbell v. Progressive Cas. Ins. Co.* (July 28, 1988), Cuyahoga App. No. 54918, unreported, 1988 WL 86949. Nor is the contract ambiguous on its face.

Both parties received that for which they contracted. (Appellant paid bodily injury damages for the accident on the insureds' behalf to the occupants of the other vehicle.)

Part One of the policy is neither ambiguous nor contrary to public policy. Defendant-appellant, the insurance carrier, is entitled to summary judgment on the issue of liability coverage.

The first assignment of error is sustained.

## II. PART FOUR—UNINSURED MOTORIST COVERAGE

The second assignment of error raises the question whether the wife is entitled to invoke the provisions of the policy's uninsured motorist coverage (Part IV) for her benefit.

The salient provisions of Part IV include, by way of coverage:

"Coverage 1—Damages for Bodily Injury Caused by Uninsured Automobiles. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

Each part of the policy contains independent definitions. This suggests the policy is divisible. Parts interface only as identified specifically. The definitional section of Part IV states as follows:

"The definitions under Part I, except the definition of 'insured,' apply to Part IV, and under Part IV:

" 'insured' means:

"(a) the named insured;

"(b) any other person while occupying an insured automobile * * * [.]
" * * *

" 'insured automobile' means:

"(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded * * * [.]
" * * *

" 'uninsured automobile' includes a trailer of any type and means:

"(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder * * * ."

The wife's argument is that since appellant denied liability coverage under Part I for the driver, Richard, the policy's "insured automobile," a 1985 Oldsmobile, became uninsured. She claims this triggered the implementation of Part IV—Uninsured Motorists Coverage, for injuries she sustained.

Much confusion and judicial discord surrounding uninsured motorist coverage is wrapped up in the question whether such coverage applies to the insured or to the automobile.

The Supreme Court's opinion in *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 22 OBR 63, 488 N.E.2d 840, with its stinging dissents, clearly reshaped the legal foundations upon which underinsured motorists coverage is to be interpreted. *Hedrick* and *Dairyland* left no doubt that the focus can be upon the automobile and not the person.

The Supreme Court held that the exclusion so based does not violate the statutory requirements for provision of uninsured coverage under R.C. 3937.18, stating:

" 'The intent of the statute is to require automobile liability insurance companies to provide their insureds protection against drivers of vehicles without liability coverage.

" 'The car in which the * * * [plaintiff] was riding, at the time of the accident, was covered by a liability insurance policy. This coverage was not available to him because he was [as a family member] specifically excluded * * *, and not because of lack of liability protection.' " *Dairyland, supra,* 32 Ohio St.3d at 364, 513 N.E.2d at 1328–1329, quoting *Holt v. State Farm Mut. Auto. Ins. Co.* (Tenn.1972), 486 S.W.2d 734, 737.

We conclude that the coverage here applies to the Oldsmobile auto. That is the policy's plain language and is not inconsistent with the statute.

Here the 1985 Oldsmobile, owned and operated by the husband, is the vehicle listed on the declarations page of the policy. Part IV applies only to "uninsured automobiles." The vehicle is not *ipso facto* uninsured simply because there is an exclusion of liability for a *person* in Part I. Her injuries were caused by the negligent operator of the insured automobile. Ergo, Part IV's unambiguous language specifically excludes her from coverage.

We are driven to these conclusions by both the holding and rationale in *Dairyland, supra.*

"Public policy does not prevent the issuance and enforcement of an automobile liability insurance policy containing a reasonable exclusionary clause, within the uninsured motorist provision, prohibiting intrafamilial recovery of damages against the issuer of the policy. (*Shearer v. Shearer* [1985], 18 Ohio St.3d 94, 18 OBR 129, 480 N.E.2d 388, followed and extended.)" *Id.,* at paragraph two of the syllabus.

The contractual distinction between the insurance contract in *Dairyland* and here is that in *Dairyland* the contract provided:

"EXCLUDED UNINSURED MOTOR VEHICLES

"A *motor vehicle* owned by *you* or furnished for *your* regular use isn't an uninsured *motor vehicle.*" (Emphasis *sic.*) *Id.,* 32 Ohio St.3d at 362, 513 N.E.2d at 1327.

Thus, uninsured coverage was not triggered because of the specific *exclusion* of the *Dairyland* contract.

Here, as noted above, the automobile in question is specifically identified as an "insured automobile," withdrawing it from the coverage of Part IV.

We find no significant difference in the above distinction. In either event the contract was not ambiguous. This is particularly so when it is understood that the uninsured motorist coverage applies to the automobile as distinguished from the insured. *Hedrick, supra.*

The ambiguity question, the public policy question, and the implications of *Ady v. West American Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547, were all extensively considered in *Dairyland.* Recapitulation on each of these points here would serve no useful purpose.

■ Finally, we conclude that the trial court's law conclusion that the policy exclusion is unreasonable is contrary to law. The exclusion here is essentially the exclusion of *Dairyland.*

We overrule the second assignment of error.

The summary judgment of the Court of Common Pleas of Stark County is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

PUTMAN, P.J., and WISE, J., concur.