[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The parties by stipulation have substituted Owners Insurance Company for Auto-Owners Insurance Company.
 DECISION.
{¶ 1} Plaintiff-appellant Richard E. Kelly ("Kelly") was seriously injured when he was struck by an Acura operated by his wife, Mary Elizabeth Kelly ("Mary Kelly"). At the time of the accident, both spouses were named as insureds in an automobile insurance policy issued by defendant-appellee Auto-Owners Mutual Insurance ("Owners") in May of 2003. The Acura Mary Kelly operated was one of two automobiles specifically covered under the Owners' policy.
 {¶ 2} As a result of the accident, Kelly made a claim against his wife for bodily injury, and his wife submitted the claim to Owners for coverage under the automobile policy. Owners denied liability based upon an endorsement excluding coverage for an injury to a spouse who resided in the same household.
 {¶ 3} Kelly then submitted his own claim for compensation under the uninsured-motorists (UM) section of the automobile policy. Owners denied this claim as well.
 {¶ 4} Based upon this denial, Kelly sued Owners for breach of contract and bad faith. Kelly moved for partial summary judgment, requesting that the court declare coverage under the UM section of the policy. Owners moved for summary judgment also, requesting the court to declare that Kelly was not entitled to UM benefits under the policy and to dismiss the bad-faith claim.
 {¶ 5} The trial court ruled in favor of Owners and dismissed the lawsuit. Kelly now appeals, raising two assignments of error.
 {¶ 6} In both assignments of error, Kelly argues that the trial court erred by granting summary judgment in favor of Owners and by denying his motion. This court reviews the granting of summary judgment de novo,[2] employing the standards set out in Civ.R. 56.
 UM Coverage {¶ 7} At issue in this case is the scope of UM coverage in the Kellys' 2003 insurance policy. R.C. 3937.18 governs UM coverage in Ohio. The legislature last amended this statute in 2001 to eliminate the requirement that insurers must offer UM coverage.[3] The legislature also modified a provision, first added by the legislature in 1997,[4] that allowed an insurer to "include terms and conditions that preclude [UM] coverage" for bodily injury suffered by an insured.[5]
Formerly, any terms and conditions precluding UM coverage had to conform to the exclusions specifically stated in the statute.[6] After the 2001 amendment, the exclusions in the statute serve only as examples; a UM policy may include any terms and conditions precluding coverage, as long as these circumstances are specified in the policy.[7] The Kellys' policy was governed by this current version of the statute.
 Interpretation of an Insurance Policy {¶ 8} An insurance policy is a contract, and the role of the court when asked to interpret the terms of any contract is to give effect to the intention of the parties.[8] We examine the contract as a whole, presuming that the parties' intent is reflected in the policy language.[9] If the language of an insurance contract is ambiguous, courts will interpret the ambiguity against the drafter of the policy, generally the insurer.[10] A contract is ambiguous only where its meaning is susceptible of two or more reasonable interpretations.[11] Thus, as a matter of law, a contract is unambiguous where the terms can be given a definite meaning.[12] Where the parties' intent is evident from the clear and unambiguous language in a policy, the plain language of the policy must be applied.[13]
 {¶ 9} As we have already noted, the UM statute mandates that any UM exclusion must be "specified" in the policy. We interpret "specified" to mean that the exclusion must be "clear and conspicuous." As with any exclusion, this court will interpret an exclusion in UM coverage "as applying only to that which isclearly intended to be excluded."[14] But we will not invoke this rule of strict construction to change the obvious intent of the parties and to impose coverage.[15]
 No Personal-Injury Liability Coverage for Intrafamilial Torts {¶ 10} While both Kelly and his wife were named insureds under the policy, the policy contained an "Exclusion of Injury to Family Members" endorsement. The endorsement provided that "liability coverage does not apply to bodily injury to you or any relative." "You" was defined as "the first named insured * * * and if an individual, your spouse who resides with you." The provision excluded bodily-injury liability coverage for intrafamilial torts. Thus, Owners denied Mary Kelly's claim for bodily-injury liability coverage because she had caused her spouse's injury.
 {¶ 11} This intrafamilial-tort exclusion, which is apparently designed to prevent fraudulent or collusive intrafamilial lawsuits for insurance benefits, is permitted under Ohio law.[16] In fact, the Ohio Supreme Court, after abolishing spousal-tort immunity, suggested that insurance companies use this type of exclusion to reduce the cost of insurance premiums.[17]
 {¶ 12} This type of exclusion can be enforced to deny UM coverage because the current UM statute, unlike former versions of the statute, eliminates the mandatory offering of UM coverage and expressly allows insurers to include terms and conditions in UM policies that preclude coverage.[18] The legislature appears to have swapped an interest in providing compensation for "uninsured" motorists with an interest in providing reasonable rates.[19] Thus, the UM statute does not prevent an insurance company from eliminating UM coverage when one spouse becomes legally liable to another for personal injuries.
 UM Coverage under the Kellys' Policy {¶ 13} Kelly claimed that if the accident did not warrant personal-injury liability coverage, then he should have been entitled to compensation under the UM portion of the policy for which he paid a separate premium. Owners accepted that Kelly was struck by an "uninsured" motorist, but denied UM coverage under section (3)(c), one of eight specified exclusions in the UM portion of the policy.
 {¶ 14} Section (3)(c) states that UM coverage does not apply "to bodily injury caused by an automobile operated by a person excluded from coverage for bodily injury liability under the policy." According to Owners, this exclusion clearly applied because Mary Kelly had been excluded from liability coverage for the intrafamilial injury. Thus, Richard Kelly could not recover UM benefits for the same intrafamilial injury.
 {¶ 15} Kelly argues the exclusion in section (3)(c) did not apply for several reasons. First, he claims his wife was not excluded from coverage from the personal-injury claim. Rather, in his view, the bodily-injury liability coverage did not apply to the circumstances giving rise to the claim. Since there was no coverage to begin with for the claim, his wife could not have been "a person excluded from coverage for bodily injury liability under the policy," as required by the exclusion.
 {¶ 16} But Kelly's logic is flawed. Owners denied Mary Kelly, a named insured, coverage for her husband's injuries because of the intrafamilial-tort exclusion in the policy. Kelly could not claim UM benefits for himself as a named insured in the same policy because Mary Kelly caused his injury and she was excluded from coverage for the injury under the policy.
 {¶ 17} Alternatively, Kelly argues that the exclusion in section (3)(c) did not clearly apply because his wife, as a named insured, did have coverage for bodily-injury liability under the policy, notwithstanding certain exceptions, including the intrafamilial-tort exclusion. Kelly claims that this created an ambiguity in coverage that should have been decided in favor of coverage.
 {¶ 18} But Kelly ignores the fact that Mary Kelly did not have coverage for this injury under the bodily-injury liability portion of the policy, and that the UM exclusion specifically adopted the bodily-injury liability coverage exclusions. Admittedly section (3)(c) did not cross-reference by number the exclusions in the bodily-injury liability portion of the policy. But the reference to the exclusions was clear and did not create an ambiguity in this case.
 {¶ 19} In related fashion, Kelly claims that the exclusion in section (3)(c) should have applied only to injuries caused by a person specifically excluded from coverage for bodily-injury liability under the policy, such as a named "relative" that the insured did not want covered as an insured. We recognize that this "specifically excluded person" provision does exist in some UM insurance policies[20] and that the legislature used this exclusion as one example of an acceptable exclusion in a UM policy.[21] But the current UM coverage statute unequivocally states that the specified exclusions are not the only acceptable exclusions.[22]
 {¶ 20} We can only assume that the parties omitted the word "specifically" because they did not intend for section (3)(c) to apply only to those "specifically" excluded from coverage for bodily-injury liability under the policy. Importantly, this interpretation renders the UM coverage consistent with the bodily-injury liability coverage with regard to the intrafamilial-tort exclusion. If this injury were not also excluded under the UM coverage, the exclusion would be meaningless because family members could plot to recover UM benefits in lieu of bodily-injury damages.[23]
 {¶ 21} In sum, Owners demonstrated that the exclusion in section (3)(c) applied, and Kelly's interpretations of section (3)(c) in favor of coverage are not reasonable under the circumstances of this case. As a result, Kelly was not entitled to recover under the UM portion of the insurance policy. The trial court correctly granted summary judgment for Owners on this issue. Accordingly, the first assignment of error is overruled.
 Bad-Faith Claim {¶ 22} In his second assignment of error, Kelly argues that the trial court erred in granting summary judgment for Owners on the bad-faith claim.
 {¶ 23} An insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the policy of insurance.[24] An insurer breaches its duty of good faith in the processing of an insured's claim where its denial of the claim is not based upon circumstances that reasonably justify the denial.[25]
 {¶ 24} Kelly's claim of bad faith was based upon Owners' denial of UM coverage. Owners denied coverage under section (3)(c) of the UM portion of the policy. We have upheld Owners' denial of Kelly's claim under this exclusion. Therefore, the claim was justifiably denied, and that denial could not serve as the basis of a bad-faith claim. Accordingly, the trial court did not err by entering judgment in favor of Owners on the bad-faith claim, and the second assignment of error is overruled.
 {¶ 25} The judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Hendon, J., concur.
[2] Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390,738 N.E.2d 1243.
[3] Am.Sub.S.B. No. 97, effective 10-31-2001.
[4] See R.C. 3937.18(J), Am.Sub.H.B. No. 261, effective 9-3-97.
[5] R.C. 3937.18(I).
[6] See R.C. 3937.18(J), Am.Sub.H.B. No. 261, effective 9-3-97.
[7] R.C. 3937.18(I), Am.Sub.S.B. No. 97, effective 10-31-2001.
[8] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, at ¶¶ 9-11.
[9] Id. at ¶ 11.
[10] Westfield at ¶ 13.
[11] Covington v. Lucia, 151 Ohio App.3d 409, 2003-Ohio-346,784 N.E.2d 186, at ¶ 18.
[12] Westfield at ¶ 11.
[13] Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 166-167, 462 N.E.2d 403.
[14] Hybud Equipment Corp. v. Sphere Drake Ins. Co. (1992),64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (emphasis in the original).
[15] Id.
[16] See Nussbaum v. Progressive Casualty Ins. Co. (1988),61 Ohio App.3d 1, 5-6, 572 N.E.2d 119.
[17] See Shearer v. Shearer (1985), 18 Ohio St.3d 94,100-101, 480 N.E.2d 388.
[18] Compare State Farm Auto. Ins. Co. v. Alexander (1992),62 Ohio St.3d 397, 583 N.E.2d 309 (overruling case law that had upheld the enforceability of an intrafamilial-tort exclusion and holding that a similar family-auto exclusion was unenforceable under a former version of the UM statute).
[19] See S.B. No. 97, Section 3(A) (uncodified law accompanying R.C. 3937.18 [effective October 31, 2001], which states, "In enacting this act, it is the intent of the General Assembly to do all of the following: (A) protect and preserve stable markets and reasonable rates for automobile insurance for Ohio consumers. * * *.).
[20] See 1 Widiss and Thomas, Uninsured and Underinsured Motorist Insurance (3 Ed. 2005), Section 4.25.
[21] R.C. 3937.18(I)(3).
[22] R.C. 3937.18(I).
[23] See, generally, Robson v. Allstate (Sept. 18, 2001), 5th Dist. No. 01CAE03007 (holding that insurance policy's "family tort immunity language" logically applied to the uninsured-motorist portion of the policy because "[i]f the policy excluded coverage [for a family tort], why would the policy give it back via the uninsured motorist portion of the policy?").
[24] Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272,452 N.E.2d 1315, paragraph one of the syllabus.
[25] Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552,1994-Ohio-461, 644 N.E.2d 397, paragraph one of the syllabus.