[Cite as *Kaiser v. Goff*, 2022-Ohio-4725.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DONNA KAISER, | : | APPEAL NO. C-220097 |
| | | TRIAL NO. A-1805973 |
| and | : | |
| MERL KAISER, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| TROY D. GOFF, JR., et al., | : | |
| Defendants, | : | |
| and | : | |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 29, 2022

*The Offices of Blake R. Maislin*, *LLC*, and *Blake R. Maislin*, for Plaintiffs-Appellants,

*Freund, Freeze & Arnold* and *Anne P. Keeton*, for Defendant-Appellee.

**ZAYAS, Judge.**

{¶1} The plaintiffs-appellants Donna Kaiser ("Donna") and her husband Merl Kaiser (collectively referred to as the "Kaisers") appeal from the trial court's entry of summary judgment for defendant-appellee Safeco Insurance Company of Illinois ("Safeco"). The Kaisers asserted a claim against Safeco for uninsured motorist/underinsured motorist ("UM/UIM") coverage potentially triggered by any fault of Donna's daughter for injuries Donna sustained while a passenger in her own car while her daughter was driving. For the reasons that follow, we affirm.

{¶2} The undisputed facts relevant to this appeal are as follows. On November 8, 2016, Donna sustained serious injuries as a passenger in her own car, a Toyota Solara, that was driven by Donna Williams ("Williams"), Donna's daughter. The injuries were sustained when Donna's car and a car driven by defendant Troy Goff, an employee of Pizza Hut, collided.

{¶3} Donna had automobile insurance for herself and the Toyota Solara with Safeco. Because liability for the November 8 collision was disputed, Donna sued both Williams and Goff/Pizza Hut. Donna also sued Safeco for UM/UIM benefits to cover any percentage of fault assessed to Williams and Goff, alleging that Williams and Goff were "uninsured motorist[s]" and/or "underinsured motorist[s]" as defined in Donna's policy with Safeco.

{¶4} Safeco moved for summary judgment on Donna's UM/UIM motorist claim tied to Williams's negligence, arguing that the policy did not afford UM/UIM coverage because the vehicle Williams was driving did not constitute an "uninsured vehicle" as defined under the Kaisers' insurance policy with Safeco ("Safeco Policy"), regardless of the available limits of Williams's liability insurance or the fault of

2

Williams. Safeco submitted with its motion an authenticated copy of the Safeco Policy in effect at the time of the accident that removed a car owned by Donna from the definition of an uninsured motor vehicle.

{¶5} The Kaisers filed a memorandum opposing summary judgment for Safeco on the claim for UM/UIM benefits. They argued the Safeco Policy was unenforceable as written because Safeco offered Donna a policy with both liability coverage and UM/UIM coverage, yet that policy contained a gap in coverage when Donna was a passenger in her own car and injured by the negligence of her driver. Characterizing the Safeco Policy as a contract of adhesion with an "odious, unintended, unexpected" "passenger seat defense" that was contrary to "public policy," the Kaisers contended the policy terms were unenforceable. The Kaisers additionally argued that the Safeco Policy should not be enforced as written because the policy terms "did not reflect the parties' intent when entering into the contract." The Kaisers did not place in evidence any material facts with respect to the making of the contract, including evidence that the Safeco Policy terms did not reflect the intent of one or both of the parties.

{¶6} On September 9, 2021, the trial court granted summary judgment to Safeco on the UM/UIM claim. That decision became final on February 16, 2022, when, after the Kaisers settled their claims against Goff, the trial court entered a final judgment disposing of all the remaining claims.[1]

---

[1] Appeals from the trial court's September 2021 interlocutory order were dismissed by this court on January 19, 2022.

## Analysis

{¶7} Though the Kaisers have set forth four separate assignments of error, all challenge the trial court's grant of summary judgment to Safeco on the claim for UM/UIM coverage tied to Williams's alleged negligence while operating Donna's car. We review the grant of summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. To prevail on a motion for summary judgment, the movant must demonstrate that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

## UM/UIM Coverage

{¶8} At issue in this case is the scope of UM/UIM coverage in the Kaisers' 2016 Safeco Policy.[2] Generally, the purpose of UM/UIM coverage is "to put the insured in the same position as if the tortfeasor were insured." LexisNexis Practice Guide: New Appleman Insurance Law 2023 Edition Section 2.03 (accessed Dec. 14, 2022).

{¶9} R.C. 3937.18 governs UM/UIM coverage in Ohio, and that statute has a turbulent legislative history that became more stable after 2001. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 19-29; *Snyder v. Am. Family Ins.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶ 13-23. In 2001, the General Assembly, through the enactment of Am.Sub.S.B. No. 97 ("S.B. 97"), amended this statute to eliminate the requirement that insurers must offer UM/UIM coverage. *See Grace* at ¶ 23. At that same time, the General

---

[2] The pleadings include a claim against Safeco for UM/UIM coverage only, not liability coverage.

4

Assembly also modified a provision, first added in 1997, that allowed an insurer to "include terms and conditions that preclude [UM/UIM] coverage" for bodily injury or death suffered by an insured. *See id* at ¶ 24.

{**¶10**} The 2001 amendment expanded the circumstances under which an insurer could limit the scope of the UM/UIM coverage in a policy, eliminating the requirement that any terms and conditions precluding UM/UIM coverage had to conform to those limitations specifically stated in former R.C. 3937.18. *See* R.C. 3937.18(I), interpreted in *Grace* at ¶ 26-30; *Snyder* at ¶ 28. As noted by the court in *Grace*, the General Assembly in the uncodified language of the implementing legislation expressed "the public policy of this state to not only eliminate the mandatory offer of UM/UIM coverage, but also to permit insurers to incorporate exclusionary or limiting provisions in their policies to limit or exclude UM/UIM coverage." *Grace* at ¶ 29.

{**¶11**} A 2012 amendment varied the language in R.C. 3937.18(I) in a way that affects intrafamily claims for wrongful death. Pursuant to that 2012 amendment, the limitations and exclusions for UM/UIM coverage are subject to the terms of R.C. 3937.46, which was also enacted in 2012. R.C. 3937.46 renders unenforceable an "intrafamily liability exclusion" in a policy that precludes liability coverage for an intrafamily wrongful-death claim unless the policy includes UM/UIM coverage that does not contain an intrafamily exclusion. *See* R.C. 3937.46. "Intrafamily liability exclusion" is specifically defined as "any provision included in an automobile insurance policy that excludes liability insurance coverage for the owner or operator of a motor vehicle against a claim for injury or death suffered by a family member of that owner or operator." R.C. 3937.46(C)(1).

5

{¶12} In summary, R.C. 3937.18(I) now contains examples of provisions limiting and excluding UM/UIM coverage, but allows for policies that include any terms and conditions precluding coverage as long as these circumstances are specified in the policy and do not conflict with the content of R.C. 3937.46 regarding wrongful-death claims. It is undisputed that the Safeco Policy at issue in this case is governed by the current version of R.C. 3937.18 and that the provision Safeco cited as precluding UM/UIM coverage is not set forth as an example in R.C. 3937.18(I).

### Policy Provisions

{¶13} The Safeco Policy provided coverage in the amount of $250,000 per person and $500,000 per accident in both the liability and UM/UIM portions of the policy. With respect to liability coverage, the Safeco Policy contained a clause that excluded liability coverage for bodily injury sustained "by any named insured or resident family member." This section of the policy additionally explained that Safeco had no duty to defend any suit or settle any claim for bodily injury not covered under the liability coverage of the policy.

{¶14} In support of summary judgment on the claim for UM/UIM coverage, Safeco cited several provisions in Part C of the policy, labeled UNINSURED MOTORIST COVERAGE and governing both UM and UIM coverage. Safeco began with the paragraph on the general provision of coverage:

A. We will pay damages which an **insured** is legally entitled to recover

from the owner or operator of:

1. An **uninsured motor vehicle** as defined in Section 1., 2., and 4. of

the definition of an uninsured motor vehicle because of **bodily injury**:

a. sustained by that **insured**; and

6

b. caused by an accident.

2. An **uninsured motor vehicle** as defined in Section 3. of the definition of an **uninsured motor vehicle** because of bodily injury sustained by an **insured**.

**{¶15}** Safeco then identified the provision defining what does, and does not constitute an uninsured vehicle:

C. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability or policy applies at the same time of the accident.

2. To which a bodily injury liability bond or policy applies at the same time of the accident if its limit for bodily injury liability is less than **minimum limits** for bodily injury liability.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or causes **bodily injury** * * *[.]

4. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you, a **family member** or any other rated driver listed in the Declarations.

(Emphasis in original.)

7

{¶16} Because Donna owned the Solara in which she was a passenger when she sustained her injuries, the trial court concluded that UM/UIM coverage was not available because the language of Part C, including Paragraph C, excluded certain tortfeasors' vehicles from the UM/UIM portion of the policy, including a vehicle Donna owned. The trial court did not find merit to the Kaisers' arguments against enforcement of this provision.

{¶17} On appeal, the Kaisers do not argue the trial court misconstrued the policy language. They maintain, however, that the policy provisions as written are unenforceable for several reasons. We conclude these arguments are meritless.

## Public Policy

{¶18} Initially, we address the Kaisers' second assignment of error. According to the Kaisers, the Safeco Policy should be found contrary to the public policy of the state, and thus, unenforceable, because the provisions allow the insurer to deny both liability coverage and uninsured coverage when an insured is injured as a passenger in her own insured automobile.

{¶19} Contract provisions that contravene the clear public policy of the state are void. *See, e.g., Lamont Bldg. Co. v. Court*, 147 Ohio St. 183, 184-185, 70 N.E. 2d 447 (1947); *John Hancock Mut. Life Ins. Co. v. Hicks*, 43 Ohio App. 242, 247, 183 N.E. 93 (10th Dist.1931) ("A policy of insurance is a voluntary contract, and may be made upon such terms and conditions as are agreed upon by the parties thereto so long as they are not in conflict with the public policy."), cited in *Casey v. Calhoun*, 40 Ohio App.3d 83, 85, 531 N.E.2d 1348 (8th Dist.1987); *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 44 (8th Dist.) ("A court may refuse to enforce a contract when it violates public policy.").

{¶20} Freedom of contract, however, is the general rule, and the Ohio Supreme Court has cautioned the courts against invalidating contracts on public-policy grounds. *See Lamont Bldg. Co.* at 185. ("At best, 'public policy' is an uncertain and indefinite term. When judges come to apply the doctrine, they must take care not to infringe on the rights of parties to make contracts which are not clearly opposed to some principle or policy of the law.").

{¶21} To prevail on their argument that the Safeco Policy is unenforceable on public-policy grounds, the Kaisers were required to demonstrate that the Safeco Policy is "clearly opposed to some policy or principle of law." *Id.* at 185. The Kaisers argue that both the judiciary and the legislature have articulated a clear policy against the enforceability of the Safeco Policy because it leaves a gap in coverage even though the insured purchased a "full coverage policy," a policy with both liability and UM/UIM coverage.

{¶22} In support of their public-policy argument, the Kaisers direct this court to the Ohio Supreme Court case of *Kyle v. Buckeye Union Ins. Co.*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195. In *Kyle*, however, a majority of the justices upheld an intrafamily exclusion that left a gap in coverage though the policy had both liability and UM/UIM coverage.

{¶23} In *Kyle*, Kathryn Kyle was injured when riding as a passenger in a car negligently driven by her sister Andrea Kyle. *Id.* at ¶ 2. At the time, both Andrea and Kathryn lived with their parents and were insured under their parents' automobile policy with the Buckeye Union Insurance Company. *Id.* This insurance policy provided coverage in the amount of $100,000 per person and $300,000 per accident in the both the liability and UM/UIM portions of the policy. *Id.* Further, the policy

covered three cars and named Andrea as the rated driver of the car involved in the collision. *Id.* at ¶ 3.

**{¶24}** The Kyles' policy "contained a standard clause that excluded liability coverage for an insured for bodily injury sustained by any named insured or resident family member" which the Kyles did not contest precluded Kathryn from collecting under the liability portion of the policy since Andrea was not entitled to liability coverage. *Id.* at ¶ 3-4. The Kyles asserted, however, that since Andrea was not entitled to liability coverage, Andrea was an uninsured driver. When Buckeye Union denied the UM claim, the Kyles filed a complaint for a declaratory judgment seeking a declaration that they could collect under the UM/UIM provisions of the policy. *Id.*

**{¶25}** Buckeye Union moved for summary judgment on the ground that UM/UIM coverage was not available because the Kyles' policy contained a provision that excluded from the definition of an uninsured motor vehicle a tortfeasor motor vehicle owned by any family member. Additionally, at the time the policy was entered into, R.C. 3937.18 contained a similar limitation on UM/UIM coverage when the tortfeasor who caused the insured's loss had operated a vehicle owned by an insured. Former R.C. 3937.18(K) stated that " 'uninsured motor and underinsured motor vehicle' do not include any of the following motor vehicles: (1) a motor vehicle that has applicable liability coverage in the policy under which the insured and underinsured motorist coverages are provided; (2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of the named insured."

**{¶26}** The Kyles argued that language in former subsection (K) conflicted with former R.C. 3937.18(J)(1), which permitted the exclusion of UM/UIM coverage when

the injured insured was occupying a vehicle owned by an insured but not covered under the liability portion of the policy (the "other-owned-vehicle exclusion"). As such, according to the Kyles, an ambiguity existed, subdivision (J) controlled, and coverage was available because Kathryn, the injured insured, was not occupying a vehicle that fell under the other-owned-vehicle exclusion. *Kyle*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, at ¶ 5 and 9. The trial court rejected the ambiguity argument, found a lack of coverage, and granted summary judgment to Buckeye Union. That judgment was affirmed on appeal by the Sixth District Court of Appeals.

{¶27} The Ohio Supreme Court also affirmed summary judgment for Buckeye Union but, as emphasized by the Kaisers in this appeal, three justices dissented. The dissenters argued that the construction set forth in the plurality opinion undermined the clear purpose behind the legislature's enactment of R.C. 3937.18: "to protect persons from losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." *See id.* at ¶ 27 (Sweeney, J., dissenting). These dissenting justices, however, were unable to persuade the four justices who voted to affirm. Thus, the Kaisers' reliance on *Kyle* in support of their public-policy argument is misplaced.

{¶28} The Kaisers also cite in support an intermediate appellate court opinion that was later reversed by the Ohio Supreme Court, *see Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, and cases from other jurisdictions regarding the intrafamily exclusion. These cases are insufficient to support the Kaisers' argument that enforcement of the Safeco Policy as written contravenes the "clear" public policy of the state of Ohio.

{¶29} Finally, the Kaisers cite the 2012 amendment to R.C. 3937.18 that effectively restricts the enforcement of an intrafamily exclusion to leave a gap in coverage in wrongful-death cases. We are not persuaded from the legislature's action to remedy the situation involving a wrongful-death claim that the Safeco Policy provision precluding UM/UIM coverage in this case is also unenforceable.

{¶30} Before the 2012 amendment, the Supreme Court had repeatedly explained that R.C. 3937.18 now "permits policies with uninsured-motorist coverage to limit or exclude coverage under circumstances that are specified in the policy even if those circumstances are not also specified in the statute" and "provide[s] insurers considerable flexibility in devising specific restrictions on any offered uninsured- or underinsured-motorist coverage." *Snyder*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, at ¶ 15, quoted in *Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, at ¶ 28. These holdings are tied to the General Assembly's express legislative intent in the uncodified language of S.B. 97, setting a public policy in the state echoing the court's sentiment years prior that it would be "for the buyers and sellers of insurance to decide" whether certain claims are insured based on the "forces of our free market economy." *Shearer v. Shearer*, 18 Ohio St.3d 94, 101, 480 N.E.2d 388 (1985) (abrogating parental and interspousal immunity).

{¶31} Appellate courts in Ohio, including this court, have enforced R.C. 3937.18(I) as written. *See Custer v. Custer*, 2016-Ohio-561, 47 N.E.3d 887 (7th Dist.), and cases cited therein; *Kelly v. Auto-Owners Ins. Co.*, 1st Dist. Hamilton No. C-050450, 2006-Ohio-3599. Courts have enforced R.C. 3937.18(I) as written even when the injured party denied a benefit is a named insured and the vehicle is insured under the policy. *See, e.g.*, *Custer* (involving policy specifically excluding UM coverage for

"a motor vehicle which is insured under the Automobile Liability Insurance of [the] policy"); *Bousquet v. State Auto Ins. Co.*, 8th Dist. Cuyahoga No. 89601, 2008-Ohio-922 (R.C. 3937.18(I) allows insurers to exclude owned vehicles listed in a policy of insurance from UM/UIM coverage, as the list of situations contained within the statute where UM/UIM coverage could be excluded was not exhaustive); *Kelly*, 1st Dist. Hamilton No. C-050450, 2006-Ohio-3599 (involving intrafamily exclusion to preclude coverage for husband's serious bodily injuries).

**{¶32}** Notwithstanding this precedent, the General Assembly only amended R.C. 3937.18(I) to require UM/UIM coverage consistent with the limitation on the enforceability of an "intrafamily exclusion" in a "wrongful death" case, and this course of action suggests legislative intent to retain the existing law unaffected by the amendment. *See Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 37 ("[L]egislative inaction in the face of knowledge of longstanding statutory interpretation may suggest a legislative intent to retain existing law.").

**{¶33}** The General Assembly has not restricted the use of UM/UIM coverage limitations based on the tortfeasor's vehicle, the coverage limitation that governs in this case. That tortfeasor-vehicle limitation applies regardless of whether the claimant is related to the tortfeasor, and the limitation is similar to a coverage limitation at one point afforded under Ohio law and accepted by the Ohio Supreme Court. *See Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, ¶ 32-38; *Kyle*, 103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1199, at ¶ 13-16, 21 (interpreting former R.C. 3937.18(K)(2) to state that a UM/UIM vehicle does not

13

include "[a] motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured.").

{¶34} The Kaisers argue that what they call the "passenger seat defense" is the most draconian of coverage limitations. However, they have not cited an Ohio case that conflicts with these authorities that interpret and apply the current version of R.C. 3937.18 in a manner contrary to the Kaisers' public-policy argument. Nor have the Kaisers cited legislation that reflects a clear public policy in their favor.

{¶35} After considering the Kaisers' public-policy argument, we hold that the Kaisers have failed to demonstrate that enforcement of the policy's specific limitation eliminating UM/UIM coverage for a "vehicle * * * [o]wned or furnished or available for the regular use of you, a family member or any other rated driver listed in the Declarations" is contrary to the clear public policy of the state, even though the policy also excludes liability coverage for an injury to Donna, a named insured. The responsibility of a court is to determine when the public-policy exception must be recognized, but it is the "legislative branch [that] is 'the ultimate arbiter of public policy.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21, cited in *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, ¶ 17.

{¶36} While the General Assembly in 2012 chose to limit the freedom of contract embodied in former R.C. 3937.18(I) in a significant way, it targeted intrafamily exclusions in the context of wrongful-death claims. This course of action, we believe, is fatal to the Kaisers' public-policy argument. Because the trial court did

14

not err by failing to find the Safeco Policy provisions unenforceable on public-policy grounds, we overrule the second assignment of error.

### Enforcement of Insurance Contract Provisions

**{¶37}** The Kaisers remaining assignments of error implicate the law on contract formation and interpretation. The first and fourth assignments of error specifically implicate the law on adhesion contracts. The trial court found no merit to the Kaisers' argument that the insurance policy was an unenforceable adhesion contract. The Kaisers argue the trial court misapplied the law with respect to adhesion contracts and that the provisions precluding coverage should be found unenforceable.

**{¶38}** With respect to automobile insurance contracts, the Ohio Supreme Court has said:

When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223 (1919), syllabus. *See, also*, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. When the language of a written

15

contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id*. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423, 43 Tex. Sup. Ct. J. 647 (Tex.2000).

On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992). A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. *Id.*; *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").

It is generally the role of the finder of fact to resolve ambiguity. *See, e.g., Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 609 N.E.2d 144 (1993). However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. *Cent. Realty Co. v. Clutter*, 62 Ohio St.2d 411, 413, 406 N.E.2d 515 (1980). In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 519 N.E.2d 1380 (1988), syllabus.

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849 797 N.E.2d 1256, ¶ 11-13.

**{¶39}** The last paragraph of this passage from *Galatis* demonstrates that automobile insurance contracts are not per se unenforceable though they are adhesive in nature. As with any contract, the rights and duties of a party to an adhesion contract are derived from the terms of the agreement. *See, e.g., Neuro-Communication Servs. v. Cincinnati Ins. Co.,* Slip Opinion No. 2022-Ohio-4379, ¶ 13 ("[i]n interpreting a contract [of insurance], we seek to give effect to the intent of the parties to the agreement"), citing *Galatis* at ¶ 11. The Kaisers did not oppose summary judgment on the ground that the terms with respect to the UM/UIM coverage were ambiguous.[3] Moreover, R.C. 3937.18 does not displace contract-law principles. *See Snyder*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, at ¶ 24.

**{¶40}** To avoid enforcement of an unambiguous provision in an insurance contract that does not violate the law or public policy, a party must establish one of the traditional contract defenses. *See, e.g., Hatfield v. Whisman*, 4th Dist. Scioto No. 16CA3738, 2016-Ohio-7597 (reviewing argument that a two-year statute of limitations in an insurance policy was unconscionable under the standards set forth in U.C.C. Section 2-302 for sales contracts, as adopted in R.C. 1302.15); *Ackerman v. State Farm Mut. Auto. Ins. Co.*, 1st Dist. Hamilton No. C-990332, 1999 Ohio App. LEXIS 5886, 16 (Dec. 10, 1999) (affirming summary judgment because insured failed to prove that policy was an unconscionable adhesion contract).

---

[3] An appellant may not use a reply brief to raise new assignments of errors or new issues, especially those not raised in the trial court. *See* App.R. 16(C); *City of Cincinnati v. Triton Servs.*, 1st Dist. Hamilton No. C-210475, 2022-Ohio-3832, ¶ 23. Thus, to the extent that the Kaisers in their reply brief are attempting to challenge the language in Section C, Paragraph C, as containing an ambiguity in light of an exclusion in that section, they are precluded from doing so.

17

### Unconscionability

**{¶41}** The Kaisers rely on unconscionability, arguing that it would be unreasonable and unexpected for Donna or any other insured to pay for a policy with liability and UM/UIM coverage when that policy invalidates all coverages if she is injured while sitting as a passenger in her own car.

**{¶42}** The Ohio Supreme Court has said that unconscionability includes both "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993), quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449, (D.C.Cir.1965), quoted in *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 20.

**{¶43}** The party asserting unconscionability of a contract bears the burden of proving that the agreement is procedurally and substantively unconscionable by a "quantum" of both prongs. (Internal quotation omitted.) *See Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34; *Hayes* at ¶ 20; *Hedeen*, 2014-Ohio-4200, 19 N.E.3d 957, at ¶ 27. Whether a written contact is unconscionable is a question of law. *Taylor* at ¶ 35.

**{¶44}** While the Kaisers allude to the Safeco Policy's possible unconscionability, they have not offered evidence sufficient to raise a genuine issue of material fact as to either procedural or substantive unconscionability. As to the substantive prong, their assertion that the challenged provision invalidates all UM/UIM coverage for Donna when she is a passenger in her own car is factually inaccurate. The challenged provision only applies when the tortfeasor's vehicle is "[o]wned by or furnished or available for the regular use of you, a family member, or

18

any other rated driver listed in the Declarations." Safeco did not invoke this provision to deny UM/UIM coverage that related to Goff, who was not driving a vehicle referenced in the challenged provision.

{¶45} Further, the Kaisers' reasonable-expectation argument is defeated by a reading of the policy. Under Ohio law, an insured has a duty to examine the coverage provided and is charged with knowledge of the contents of her own insurance contract. *See Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 16. Though Donna's arguments resonate with us as insureds, we cannot ignore that the lack of coverage challenged by Donna as unreasonable and unexpected is derived from the unambiguous terms of the agreement and that identical and similar terms, all leaving the insured without UM/UIM coverage, have been found enforceable by Ohio courts. *See Bousquet*, 8th Dist. Cuyahoga No. 89601, 2008-Ohio-922 (R.C. 3937.18(I) allows insurers to exclude owned vehicles listed in a policy of insurance from UM/UIM coverage, as the list of situations contained within the statute where UM/UIM coverage could be excluded was not exhaustive.); *Kelly*, 1st Dist. Hamilton No. C-050450, 2006-Ohio-3599; *Custer*, 2016-Ohio-561, 47 N.E.3d 887, and cases cited therein.

{¶46} With respect to procedural unconscionability, the record is limited to the general recognition that insurance contracts are adhesive in nature. However, "even a contract of adhesion is not in all instances unconscionable per se." *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 50; *Hedeen*, 2014-Ohio-4200, 19 N.E.3d 957, at ¶ 35-36. The Kaisers do not cite case law indicating that this disparity alone is sufficient to raise a genuine dispute as to any material fact with respect to unconscionability. For these reasons, we conclude that the Kaisers have failed to

19

demonstrate that summary judgment should have been denied based their claim that the UM/UIM provision is unconscionable. Accordingly, we overrule the first and fourth assignments of error.

## Reformation Based on Mistake

{¶47} In their third assignment of error, the Kaisers maintain that the Safeco Policy must be reformed, instead of being enforced as written, "to correctly integrate the agreement of the parties." Under Ohio law, an insurance policy may be "reformed" to correct a mutual mistake by the insured and the insurer, or to correct a unilateral mistake made by the insurer in failing to issue a policy in accordance with a prior agreement of the parties. *Amankwah v. Liberty Mut. Ins. Co.*, 2016-Ohio-1321, 62 N.E.3d 814, ¶ 26 (1st Dist.), citing *Snedegar v. Midwestern Indemn. Co.*, 44 Ohio App.3d 64, 69-70, 541 N.E.2d 90 (10th Dist.1988). Because reformation is an equitable remedy, available to a complaining party who has acted with reasonable diligence, where a complaining party has failed to read a contract, equitable relief in the form of contract reformation is generally prohibited. *See Amankwah* at ¶ 26.

{¶48} To prevail, the party seeking reformation must, among other things, present evidence on the intent of the parties. *See, e.g., Snedegar* at 71. As we previously noted, the Kaisers failed to place into evidence any material facts on the formation of the contract that support reformation of the policy language. Thus, the Kaisers failed to demonstrate that a genuine issue of material fact exists for trial on the issue of reformation. Accordingly, we overrule the third assignment of error.

## Conclusion

{¶49} In conclusion, we affirm the decision of the trial court entering summary judgment in favor of Safeco. The summary-judgment record establishes that

the Safeco Policy provides no UM/UIM coverage for Donna's injuries to the extent they resulted from the fault of Williams, who was driving Donna's car.

Judgment affirmed.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.