[Cite as *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2023-Ohio-1727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JUN MA, PH.D., | : | APPEAL NO. C-220420<br>TRIAL NO. A-1606910 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| CINCINNATI CHILDREN'S<br>HOSPITAL MEDICAL CENTER, | : | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 24, 2023

*Mezibov Butler*, *Marc D. Mezibov*, *Susan L. Butler* and *Brian J. Butler*, for Plaintiff-Appellant,

*Taft Stettinius & Hollister LLP*, *Beth A. Bryan*, *W. Stuart Dornette* and *Evan T. Priestle*, for Defendant-Appellee.

**BERGERON, Presiding Judge.**

{¶1} This matter comes before this court a second time as plaintiff-appellant Jun Ma, Ph.D., appeals a grant of summary judgment in favor of defendant-appellee Cincinnati Children's Hospital Medical Center ("Children's"). A biomedical researcher and tenured professor jointly employed by Children's and the University of Cincinnati College of Medicine ("UC COM"), Dr. Ma challenges his termination as inconsistent with the "tenure" requirement contained in his written contract. The trial court granted summary judgment in Children's favor after finding that, as a matter of law, Children's had "just cause" to terminate his employment. But we see things differently—because the concept of "just cause" is ambiguous in the context of this case, various factual issues exist for resolution at trial and preclude summary judgment. Accordingly, we sustain Dr. Ma's assignment of error challenging the trial court's grant of summary judgment, and we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

I.

{¶2} In June 1992, an initial offer of employment as a researcher at Children's and affiliated faculty member at UC COM was extended to Dr. Ma. This offer letter anticipated a potential future tenure promotion and included a specific amount of money that Children's would provide as start-up funds to support Dr. Ma's salary and research in the first three to five years of employment, affording Dr. Ma a few years of cushion before needing to obtain external funding. It also outlined Dr. Ma's responsibilities as a researcher at Children's, including the requirement that he "sustain [his] individual research program[] with external funds from federal granting agencies." Notably, the letter did not define the term "sustain" or otherwise specify a

percentage of costs (or any specific amount of funds) that Dr. Ma must cover each year. Nor did the letter detail any potential consequences for failing to sustain sufficient funding levels. The letter did, however, assure: "Your salary and support are the responsibility of Children's Hospital. These are guaranteed by us and you can proceed with the assurance that the salary and support as listed are firm." Dr. Ma accepted the offer set forth in the 1992 letter and commenced work in September of that year.

{¶3} In October 1997, Dr. Ma applied for tenure. Following a lengthy administrative review process, he was awarded tenure and promoted to an associate professorship in June 1998. At the time he achieved tenure, Children's had no written tenure policy, nor was Dr. Ma otherwise apprised of the rights associated with his tenured position. *See Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2020-Ohio-1471, 153 N.E.3d 866 (1st Dist.).

{¶4} Nearly a decade later, in 2007, the University of Houston courted Dr. Ma and offered him a job. To convince him to stay, Children's offered to increase his salary to $160,000, to move him to the Children's Division of Biomedical Informatics where he could help develop a new Center for Gene Variant Studies, and to recommend his promotion to full professor. As start-up funding for this new position, Children's offered a specific amount of money over the following three years to supplement his external funding and support his salary and research. The promotion package persuaded Dr. Ma to remain at Children's.

{¶5} Beginning in 2010, however, Dr. Ma's performance reviews began cataloging a consistent failure to meet funding expectations. Each of his reviews between 2010 and 2015 emphasized that he failed to secure adequate funding, and no signs of improvement emerged on the horizon. And it is undisputed that, between

3

June 2012 and September 2015, Dr. Ma did not apply for any grants. In the 14 months following September 2015, he submitted six applications for federal funding, all of which were denied.

{¶6} Frustrated by this trend, in mid-2016, Children's notified Dr. Ma that it could no longer support his position, allowing him eight months to secure other employment. Dr. Ma inquired into materials regarding what tenure meant so that he could understand his rights. But shortly thereafter, he received a policy outlining his rights as an at-will employee. When Dr. Ma attempted to explain that he was a tenured professor and therefore not at-will, Children's refused to consider his viewpoint.

{¶7} As a result, in December 2016, Dr. Ma filed a complaint against Children's and UC COM, asserting claims for promissory estoppel, fraudulent inducement, and declaratory and injunctive relief. In March 2017, the trial court granted UC COM's motion to dismiss it from the case, and given that Dr. Ma never appealed that dismissal, the case has proceeded ever since against Children's as the sole defendant.

{¶8} In August 2017, after the trial court denied him the injunctive relief he sought, Children's terminated Dr. Ma's employment due to his failure to maintain adequate funding. In October 2018, however, the trial court granted summary judgment in favor of Dr. Ma on his declaratory relief claim. The trial court held that he enjoyed certain contractual tenure rights, including just cause termination protection and a pretermination hearing before an independent panel. The court declined to rule on whether the grounds for Dr. Ma's employment termination were justified, however, leaving that issue to the independent panel. The court also ordered Dr. Ma's reinstatement to his faculty position and lab as well as restoration of back-

pay and employee benefits to which he would have been entitled in the absence of his termination.

{¶9} Children's appealed the judgment to this court, and in April 2020, we affirmed only the portion of the judgment holding that tenure entitled Dr. Ma to continued employment at Children's absent just cause for termination. *Ma*, 2020-Ohio-1471, 153 N.E.3d 866, at ¶ 27. We reversed the finding that Dr. Ma was entitled to procedural "due process" protections such as a pretermination hearing and vacated reinstatement and other remedies, holding that Dr. Ma had not yet established an absence of just cause. *Id.* at ¶ 38. In this respect, we emphasized that the issue of whether Dr. Ma proved that Children's lacked just cause to terminate his employment was "not * * * resolved on the record before us." *Id.* at ¶ 34.

{¶10} On remand, in December 2020, Dr. Ma filed an amended complaint against Children's, asserting claims for declaratory judgment, injunctive relief, and breach of contract. The trial court struck the claim for injunctive relief, *see Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 4 ("specific performance is not an available remedy for breach of an employment contract unless it is explicitly provided for in the contract or by an applicable statute"), which Dr. Ma does not appeal.

{¶11} In August 2021, Children's filed a summary judgment motion on Dr. Ma's two remaining claims, requesting that the trial court find as a matter of law that it possessed just cause to terminate his employment. Alongside his response in opposition to the motion, Dr. Ma moved to file various documents under seal so that he could submit comparative evidence that other Children's professors, equally or more under-funded than him, did not suffer termination. With respect to the breach

5

of contract claim, the trial court found that Dr. Ma's failure to develop and maintain external funding for his research program constituted just cause for termination of employment as a matter of law. As such, the court granted Children's motion for summary judgment in August 2022. The trial court never ruled on the motion to file documents under seal.

**{¶12}** Dr. Ma now appeals the trial court's judgment with respect to the breach of contract claim, raising two assignments of error.

II.

**{¶13}** In his first assignment of error, Dr. Ma claims that the trial court erred in finding that no genuine issue of material fact exists with respect to whether Children's had just cause to terminate his employment. According to Dr. Ma, the trial court should not have resolved this issue on summary judgment.

**{¶14}** We review this question de novo, conducting an independent review of the record to determine the propriety of summary judgment. *See Al Neyer, LLC v. Westfield Ins. Co.*, 1st Dist. Hamilton No. C-200007, 2020-Ohio-5417, ¶ 13.

> Under Civ.R. 56(C), summary judgment is proper where the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."

*Id.* at ¶ 14, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

**{¶15}** The elements of a breach of contract claim include: "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach." *Brendamour v. City of the Village of Indian Hill*, 1st Dist. Hamilton Nos. C-210504, C-210516 and C-210517, 2022-Ohio-4724, ¶ 18, citing *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 37 (1st Dist.).

**{¶16}** As we recognized in the prior appeal, Dr. Ma's breach of contract claim arises under the "valid and binding contract" that this court determined "governs Dr. Ma's employment." *Ma*, 2020-Ohio-1471, 153 N.E.3d 866, at ¶ 32. The contract consisted of "a series of communications over a number of years that [gave] rise to the contractual relationship[.]" *Id.* at ¶ 17. At the heart of the contract are four documents: the 1992 offer letter, Dr. Ma's acceptance, a 1997 document awarding tenure, and a 2007 offer letter. Notably, none of these documents define "just cause," nor did Children's put forth any tenure policy or document defining or otherwise explaining the term during the relevant period of 1992-1998: Dr. Ma was awarded tenure in 1998, and "[c]ourts are required to interpret [a] contract in such a way as to give effect to the intention of the parties *at the time the agreement was entered into * * *.*" (Emphasis added.) *Watkins v. Brown*, 97 Ohio App.3d 160, 163, 646 N.E.2d 485 (2d Dist.1994). The 2007 letter could also assume relevance, since the parties renegotiated certain aspects of their relationship, but it too stands silent on the meaning of "tenure" or "just cause."

**{¶17}** With the first aspect of a contractual claim satisfied, the parties shift their focus to the second and third elements. With respect to the second element (performance by the plaintiff), Children's argues that Dr. Ma could not prevail on his breach of contract claim because, having failed to secure adequate funding as required

7

by his employment contract, he failed to establish that he performed *his* obligations under the contract upon which he is suing. *See Patel v. Krushna SS LLC*, 2018-Ohio-263, 106 N.E.3d 169 (8th Dist.). And as to the third element (breach by the defendant), absent Dr. Ma's performance, Children's insists that it could not have breached. On both points, Dr. Ma counters that a genuine issue of material fact remains with respect to whether Children's had just cause to terminate him.

{**¶18**} As we consider the meaning of "just cause" in the context of Dr. Ma's tenure agreement, as in any contractual dispute, our "primary objective is to ascertain and give effect to the parties' intent * * *." *Wal-Mart Realty Co. v. Tri-Cty. Commons Assocs., LLC*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 10. "Just cause" protection arises by virtue of the definition of "tenure" that we recognized based on the state of the undisputed record existing in the prior appeal. *Ma* at ¶ 21, 29. If, in considering the language employed by the parties, the contractual provision at issue is clear and unambiguous, we defer to the plain language of the agreement and apply it. *See id.* at ¶ 17, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). But, if the provision proves ambiguous, the court may consider extrinsic evidence to discern the parties' intent. *See Kahler v. Cincinnati Inc.*, 1st Dist. Hamilton No. C-140407, 2015-Ohio-979, ¶ 17. Such ambiguity can arise when "a material phrase in the provision is undefined." *Ma* at ¶ 17, quoting *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 11th Dist. Lake No. 2013-L-010, 2014-Ohio-1572, ¶ 18.

{**¶19**} As a threshold matter, although both parties present competing caselaw to persuade us of their conceptualization of "just cause," we must acknowledge that Ohio caselaw fails to define the term "just cause" with any real precision. Caselaw

8

supplies various definitions, including requiring "some degree of 'fault' on the part of the employee," *Scarnati v. Ohio Dept. of Mental Health*, 10th Dist. Franklin No. 94API01-102, 1994 Ohio App. LEXIS 3534, 13 (Aug. 11, 1994), "a fairly serious matter," *Ellsworth v. Streetsboro City School Dist. Bd. of Edn.*, 2019-Ohio-4731, 136 N.E.3d 549, ¶ 47 (8th Dist.),  and "neglect of duty * * * dishonesty * * * unfaithfulness to the employer's interest," *Hosking v. Hollaender Mfg. Co.*, 114 Ohio App. 70, 71, 175 N.E.2d 201 (1st Dist.1961).  While no consistent definition of "just cause" exists in Ohio law, various Ohio cases have emphasized the fact-dependent nature of the inquiry: "[t]he determination of whether just cause [for termination of employment] exists necessarily depends on the unique factual considerations of the particular case." *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985); *see DS Express Carriers Inc. v. Dixie*, 6th Dist. Erie No. E-12-034, 2013-Ohio-4829, ¶ 4 ("Whether just cause for termination of employment exists depends on the unique facts of the case."); *Bellevue City Sch. Dist. Bd. of Edn. v. Martin*, 6th Dist. Huron No. H-12-009, 2013-Ohio-2801, ¶ 11; *Gen. Die Casters, Inc. v. Dir., Ohio Dept. of Job and Family Servs.*, 9th Dist. Summit No. 27701, 2015-Ohio-4033, ¶ 9.  We see no indication in the existing record that the parties intended to borrow any specific legal definition of "just cause" to govern their relationship, and so the inquiry in this case remains necessarily a fact-dependent one.

{¶20} Without any contractual definition of "tenure" or the related concept of "just cause," or any Children's policy or document shedding light on its meaning during the relevant time period,[1] we must consider extrinsic evidence.  "Although

---

[1] Many employment contracts, of course, contain detailed definitions of "just cause."  This one, unfortunately, does not.

ordinarily courts should not grant summary judgment on a contract dispute when an ambiguity exists, * * * if the extrinsic evidence stands undisputed, then the court may take this step." (Citation omitted.) *Ma*, 2020-Ohio-1471, 153 N.E.3d 866, at ¶ 18, citing *Lewis v. Mathes*, 161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318, ¶ 25 (4th Dist.).

{¶21} Both Children's and Dr. Ma present evidence to advance their respective interpretations of "just cause." Dr. Ma testified that, at the time of his award of tenure, he believed "just cause" contemplated employment protection in the absence of intentional misconduct. He understood that he could not be fired unless he engaged in intentional misconduct, akin to sexual harassment or fraud. He also explained that funding deficiencies, in his view, would not rise to the level of just cause. To bolster this interpretation, Dr. Ma relies on testimony from Dr. Sandra Degen, a retired Children's employee who served on the committee that recommended him for tenure. Dr. Degen testified that, based on her understanding of tenure and just cause gathered through her service at Children's, a lack of funding is not and has never been a sufficient reason to terminate a tenured professor's employment, so long as the professor documents that he or she is making a concerted effort to apply for grants. According to Dr. Degen, the following would justify termination of a tenured employee: unprofessional behavior, academic misconduct, plagiarism, falsification of data, or mistreatment of colleagues. And, as this court noted in 2020, Dr. Degen's testimony is probative as she has personal knowledge of tenure and its conditions at Children's during the relevant time period and she served on the committee that evaluated Dr. Ma's suitability for tenure. *See Ma* at ¶ 20.

**{¶22}** On the other hand, Children's maintains that, in its view, "just cause" encompasses Dr. Ma's failure to secure sufficient funding where his funding deficiencies injured Children's by costing it hundreds of thousands of dollars. In support of its view, Children's cites to *Hosking*, 114 Ohio App. at 72, 175 N.E.2d 201, which held that "it is sufficient for the employer to show that the employee was guilty of a default in duty whose natural tendency was to injure his business." Children's documents a persistent failure of Dr. Ma to attain appropriate levels of funding to support his salary, which left Children's footing an increasingly growing bill between 2012 and 2016. According to Children's, it emphasized this funding obligation to Dr. Ma in the 1992 letter: "In exchange for our support, we expect you to develop an independent research program and to maintain external funding of your research," and "all our faculty must sustain their individual research programs with external funds from federal granting agencies." Children's explains that it expected Dr. Ma to sustain 70 percent of his research and salary through external funding. As far as the record reveals, this 70 percent target began appearing on Dr. Ma's performance reviews in 2010 and was included as a provision in the employment contracts of more recently hired Children's employees. Therefore, according to Children's, because certain contractual language required Dr. Ma to obtain funding, and he failed to do so, which injured Children's, "just cause" for termination of employment existed as a matter of law.

**{¶23}** Although we appreciate Children's argument here, several factors convince us that it did not establish entitlement to judgment as a matter of law. First, while some contractual language suggests an obligation to attain funding, other contractual language creates ambiguities on this score. For example, the 1992 letter

contains a provision stating: "Your salary and support are the responsibility of the Children's Hospital. These are guaranteed by us and you can proceed with the assurance that the salary and support as listed are firm." Second, and related, the 70 percent figure highlighted by Children's appears nowhere in any of the relevant contractual documents pertaining to Dr. Ma. And this gets back to the problem that we highlighted in the prior appeal—Children's simply failed to engage in any drafting precision in its agreement with Dr. Ma. Had it provided some clear 70 percent metric and indicated that failure to attain that level would constitute just cause, then we probably would not be here. And third, without any contractual provision explaining some mandatory percentage and the repercussions of failure to attain it, we cannot say that the level of funding that Dr. Ma attained constitutes just cause as a matter of law. Reinforcing that point, some evidence presented by Dr. Ma indicates that he was not meeting the 70 percent "requirement" at the time that Children's convinced him to stay in 2007 and promoted him. Moreover, while the 2007 letter warned, "We cannot guarantee funds to maintain the operation of your laboratory, should you have a 'funding gap,' " it never elaborated on this point or indicated that this "gap" might constitute grounds for termination. In fact, evidence in the record reveals that funding gaps are common and even expected, and Dr. Degen testified that she understood that funding deficiencies would not result in termination, but instead would simply impact the size and scope of the professor's research opportunities.

{¶24} Dr. Ma seems to acknowledge that, at some level, an abject failure to perform his job functions would represent just cause for termination. But the problem is where to draw the line, in light of the evidentiary record at hand. Given the material disputes of fact and the inherent ambiguity in the contractual documents, a jury will

ultimately have to do that. Taking all inferences in favor of Dr. Ma as the nonmoving party, because the definition of "just cause" is highly fact-dependent and bears on the propriety of his termination—underpinning his breach of contract claim—this issue is genuine and material. And "[i]t is generally the role of the fact finder to resolve ambiguity." *Kaiser v. Goff*, 2022-Ohio-4725, 204 N.E.3d 1203, ¶ 38 (1st Dist.), quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13.

**{¶25}** To be clear, this is not to say that Dr. Ma's ongoing failure to obtain sufficient funding is not just cause to terminate his employment. At trial, when presented with the contract and the extrinsic evidence bearing on the definition of "just cause" in this case from the relevant period, a jury may well find that Children's had just cause to terminate Dr. Ma's employment. However, on this record and at this stage of the proceedings, we simply cannot decide this question as a matter of law.

**{¶26}** Accordingly, we sustain Dr. Ma's first assignment of error.

### III.

**{¶27}** In his second assignment of error, Dr. Ma maintains that the trial court's failure to rule on his motion to file documents under seal unduly prejudiced him on summary judgment. Dr. Ma sought to submit comparative evidence of other faculty members' funding levels. But because we are sustaining Dr. Ma's first assignment of error and remanding this cause for trial, this issue is moot, and we decline to address the second assignment of error. The trial court should consider Dr. Ma's motion on remand.

\* \* \*

**{¶28}** In light of the foregoing analysis, we sustain Dr. Ma's first assignment of error, reverse the trial court's grant of summary judgment in favor of Children's, and remand this cause for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**BOCK** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.